John R. Ertz and Workmen's Compensation Appeal Board *v.* Glen Nan, Inc. and Commonwealth of Pennsylvania. Glen Nan, Inc., Appellant.

Argued December 10, 1976, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Joseph A. Murphy*, with him *Lenahan, Dempsey & Murphy*, for appellant.

*Eugene Duffy*, with him *John E. O'Connor* and *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE KRAMER, March 25, 1977:

This is an appeal by Glen Nan, Inc. and its former insurance carrier, Rockwood Insurance Company (Rockwood), from an order of the Workmen's Compensation Appeal Board (Board), which ordered Rockwood to pay 25% of the disability benefits awarded to John R. Ertz.

There is no dispute in this appeal as to Ertz's entitlement to compensation benefits for total disability due to anthracosilicosis under Section 108(q) of The Pennsylvania Workmen's Compensation Act[1] (Act). The sole question for resolution is whether and to what extent Rockwood or The State Workmen's Insurance Fund (The Fund) is liable for payment of those benefits.

Ertz was employed as an anthracite coal miner for Glen Nan, Inc. and worked in and around the mines on the 11 P.M. to 7 A.M. shift. The last shift worked by Ertz commenced at 11 P.M. on February 21, 1974 and ended at 7 A.M. on February 22, 1974. During that shift, the insurance coverage provided to Glen Nan by Rockwood expired at 12:01 A.M. on February 22, while coverage provided by The Fund commenced at precisely the same moment.

After determining that Ertz was totally disabled, as of October 25, 1974, by anthracosilicosis, the referee

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §27.1(q).

apportioned the payment of benefits, pursuant to Section 305.1 of the Act,[2] at 50% to be paid by the Commonwealth and 50% to be paid by Glen Nan or its insurance carrier. The referee, however, further apportioned the employer's duty to pay by directing Rockwood and The Fund to each pay 25% of the benefits awarded.[3] Objecting to this latter apportionment, Rockwell appealed to the Board, which affirmed the referee's decision.

It has been held that the compensation authorities "have jurisdiction to determine the general question of the liabiliy of an insurer under the policy and whether the policy is in force or has been cancelled." *Eldridge v. Blue Ridge Textile Co.*, 160 Pa. Superior Ct. 578, 584, 52 A.2d 339, 342 (1947). *See Workmen's Compensation Appeal Board v. Cicioni*, 29 Pa. Commonwealth Ct. 381, 370 A.2d 1256 (1977). *Shiery v. Lauffer Tire Service, Inc.*, 197 Pa. Superior Ct. 209, 177 A.2d 455 (1962); *Kracoski v. Bernice White Ash Coal Co.*, 183 Pa. Superior Ct. 155, 130 A.2d 190 (1957); *Gronski v. Jeddo-Highland Coal Co.*, 168 Pa. Superior Ct. 605, 81 A.2d 590 (1951); *Karoly v. Jeddo-Highland Coal Co.*, 166 Pa. Superior Ct. 571, 73 A. 2d 214 (1950); *Gaydosh v. Richmond Radiator Co.*, 164 Pa. Superior Ct. 154, 63 A.2d 502 (1949). Such a determination is of course, subject to review by this Court. In a case, such as this, where the party with the burden of proof has prevailed below, the scope of that review is limited to determining whether constitutional rights were violated, an error of law was committed or any necessary finding of fact was unsup-

[2] 77 P.S. §411.1 (apportions the duty to pay benefits between employer and Commonwealth according to date of disability).

[3] It must be noted that any apportionment between insurance carriers is not pursuant to Section 305.1. That section provides only for apportionment between the employer and the Commonwealth.

ported by substantial evidence. *Garden Coal Co. v. Workmen's Compensation Appeal Board*, 27 Pa. Commonwealth Ct. 568, 367 A.2d 360 (1976).

Section 301(c)(2) of the Act, 77 P.S. §411(2) provides in pertinent part:

> The employer liable for compensation provided by section 305.1 or section 108, subsections (k), (l), (m), (o), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. . . .

Under a similar provision in Section 301(g) of The Pennsylvania Occupational Disease Act,[4] the employe's last exposure to the occupational hazard has been held to fix the liability of both the employer *and* his *insurance carrier*. *Gronski v. Jeddo-Highland Coal Co., supra; Karoly v. Jeddo-Highland Coal Co., supra; Gaydosh v. Richmond Radiator Co., supra.* We conclude that this is likewise the case under Section 301(c)(2) of The Workmen's Compensation Act.[5]

---

[4] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1401(g).

[5] It is important to avoid confusion between ascertaining who is the employer liable under Section 301(c)(2) and apportioning the liability between that employer and the Commonwealth under Section 305.1. As stated in the text, the former is determined as of the employe's "last exposure." The latter is determined as of the "date of disability"; that is, the date that actual disability is found to have occurred. *See Garden Coal Co. v. Workmen's Compensation Appeal Board, supra; Workmen's Compensation Appeal Board v. Rochester & Pittsburgh Coal Co.*, 23 Pa. Commonwealth Ct. 441, 353 A.2d 82 (1976) ; *Pekorofsky v. Glen Alden Coal Co.*, 171 Pa. Superior Ct. 97, 89 A.2d 890 (1952). "Last exposure" serves to identify both the liable employer and the insurance carrier that must assume the employer's obligation. This is not altered by a possible reduction in the actual dollar amount of that obligation due to the operation of Section 305.1, because the Commonwealth's obligation under that section is merely an assumed gratuity in relief of the employer. *Garden Coal, supra*, at 571, 367 A.2d at 362.

The conclusion that ''last exposure'' fixes the liability of the employer and carrier does not, however, resolve the present case. The referee ordered Rockwood and The Fund to assume equal shares of the employer's obligation on the ground that both carriers provided coverage on the *date* of last exposure. Rockwood maintains that liability of a carrier attaches at the *moment* of last exposure. Our research discloses this to be a matter of first impression.

We note initially that Section 301(c)(2) of the Act imposes liability upon the employer on the basis of a last exposure ''for a period of not less than one year.'' The reason for this durational requirement is not difficult to understand. While the Legislature clearly intended in the Act that liability for a single occupational illness not be apportioned among the various employers in the industry for whom an employe has worked over the years, it likewise manifested in Section 301(c)(2) its intention that an employer not be liable for an occupational illness to which it made, what the Legislature considered to be, a comparatively insignificant contribution.[6] Such considerations are inapplicable to the situation of the insurance carrier. The Act imposes liability upon the employer for the role his business has played in causing an occupational illness, whereas the insurer's liability arises merely from its contractual undertaking to protect the employer from liability arising out of the employer's activities. By reducing the risk to the employer, the requirement of a one-year exposure inures to the benefit of the insurer by likewise reducing its risk. In view of its rejection of apportionment of liability in the case of employer's, we do not believe that the

---

[6] A further provision of Section 301(c)(2) provides the only exception to the one-year duration of last exposure requirement. That is, where no exposure was of one year or more in duration, the employer during the longest period of exposure is liable.

Legislature intended a *further* benefit and protection for *insurers* in the form of apportionment among insurers of the employer's liability arising from an employe's "last exposure."[7]

Given that we observe the intent of the Legislature to run counter to the apportionment among insurers of the liability arising out of the "last exposure," we find no reason in law or logic to achieve precisely that result in this case by denominating the last calendar day of an employe's exposure as the crucial period of "last exposure" for the fixing of an insurance carrier's liability. We conclude that, absent fraud, the liability of the carrier attaches at the last moment of an employe's exposure. Thus, under the facts in this case, The Fund must fully assume the employer's obligation to pay benefits.

## ORDER

AND Now, this 25th day of March, 1977, the decision of the Workmen's Compensation Appeal Board, at Docket No. A-70895, filed October 8, 1975, is reversed insofar as it orders the Rockwood Insurance Company to assume any portion of the liability of Glen Nan, Inc., to pay benefits to John R. Ertz. The remainder of the Board's decision is hereby affirmed as hereinafter modified. Compensation is awarded to

---

[7] Our conclusion is collaterally supported by Sections 651 and 653 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§811, 813. Section 651 requires that every policy of insurance against liability under The Workmen's Compensation Act or The Pennsylvania Occupational Disease Act contain the agreement of the insurer to pay *all* amounts for which the employer may become liable under those Acts. Section 653 expressly prohibits any limitation of liability of the insurer to an amount less than that which the employer may become liable for under the Acts. We believe these provisions evidence a legislative intention that one insurer assume the full risk of an employer's liability arising out of a single injury or occupational illness.

the claimant herein at the rate of $106.00 per week from October 25, 1974, and continuing within the limitations of the Act. Fifty per cent or $53.00 shall be paid by Glen Nan, Inc., and its insurance carrier, The State Workmen's Insurance Fund, and fifty per cent or $53.00 shall be paid by the Commonwealth of Pennsylvania. All compensation awarded herein shall be paid to the claimant, John R. Ertz, by The State Workmen's Insurance Fund pursuant to Rule 121.21 (b) of the Bureau of Occupational Injury & Disease Compensation. Interest is assessed at the rate of ten per cent per annum on all deferred payments of compensation owing by the insurance carrier.