525 A.2d 881

Bucyrus-Erie Company and Argonaut Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Gourn), Respondents.

Submitted on briefs March 23, 1987, to Judges MacPhail and Colins, and Senior Judge Blatt, sitting as a panel of three.

*Fred C. Trenor, Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioners.

*Catherine A. Blue,* Assistant Chief Counsel, for respondent, State Workmen's Insurance Fund.

*John W. McTiernan, Caroselli, Spagnolli & Beachler,* for respondent, John B. Gourn.

OPINION BY JUDGE MACPHAIL, May 15, 1987:

Argonaut Insurance Company (Argonaut) petitions for our review of an order of the Workmen's Compensa-

tion Appeal Board (Board) which affirmed an order of a referee ordering Argonaut to pay John B. Gourn (Claimant) disability benefits under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1031. We affirm.

The sole issue we are confronted with is whether Argonaut is liable to pay Claimant the benefits or whether one of the insurance companies that was previously the workmen's compensation carrier for the Bucyrus-Erie Company (Employer) should be liable.

We keep in mind that our scope of review of Board decisions is limited to determining whether an error of law was committed, whether any necessary fact findings are not supported by substantial evidence or whether constitutional rights have been violated. *Holgate v. Workmen's Compensation Appeal Board (City of Philadelphia),* 104 Pa. Commonwealth Ct. 32, 521 A.2d 82 (1987).

Claimant's disability is related to lung cancer which he contracted as a result of his long exposure to asbestos in Employer's factory. Central to the issue presented for our review is the referee's finding of fact number seven:

7. In his work as an electrician and maintenance man claimant could work on various pieces of electrical equipment, including motors, cranes, annelling [sic] ovens, mold ovens, welding cables and wrappings. Claimant estimated that he spent approximately four hours each working day working on overhead cranes above the pouring operations. The claimant, in his work as an electrician, would come in contact with materials that contained asbestos. The mold ovens were encased in asbestos. Welders and airarcers would use asbestos cloth to cover castings. Asbestos rope was used as an insulation for castings, and asbestos-covered electric wire was

strung overhead. The asbestos products would become airborne either in using the products or as a result of the various tearout processes or wear and tear of the particular product. Some of the asbestos products were no longer in use at the time that claimant ceased working, although there were still some asbestos products in the plant.

Claimant's last day of work was January 8, 1980. Argonaut became Employer's workmen's compensation carrier on January 1, 1980. Argonaut avers that the Board erred in affirming the referee's award because there was no substantial evidence to support a finding that Claimant was exposed to asbestos during the period between January 1, 1980 and January 8, 1980.

Where there have been successive insurance carriers, the insurance carrier whose policy is in effect at the last moment of a claimant's exposure to an occupational hazard is the insurance carrier liable to pay benefits. *See Insurance Company of North America v. Workmen's Compensation Appeal Board (Dettenmeyer)*, 504 Pa. 589, 475 A.2d 1323 (1984); *Ertz v. Glen Nan, Inc.*, 29 Pa. Commonwealth Ct. 409, 371 A.2d 533 (1977). The question we must resolve, therefore, is whether the referee's finding that Claimant was exposed to asbestos between January 1, 1980 and January 8, 1980 is supported by substantial evidence. We conclude that it is.

During hearings before the referee, Claimant testified as follows:

Q. Do you recall handling any material or working with asbestos between January 1, 1980 and January 8, 1980?

A. No.

Q. Do you recall seeing any asbestos in the plant between January 1, 1980 and January 8, 1980?

A. Yes.

Q. Where was it located?

A. *It might still be there on the ovens.*

Q. On the oven?

A. Yes, No. 2 mould oven.

Q. What did it look like?

A. Well, it's a plaster moulded onto the oven, outside of the oven.

Q. Did you work anywhere in that proximity?

A. Yes.[1] (Emphasis added.)

Claimant testified that asbestos fibers from the mould oven coverings became airborne.[2] He also testified that he strung asbestos wire cables as late as 1978[3] and that many of the cables he worked on were covered with asbestos.[4]

Neither Claimant nor the Employer's witness testified that any of the asbestos cables were ever removed. The closest that Michael Volpe, the Employer's witness, came to refuting Claimant's testimony came in the following exchange:

Q. And from 1979 through 1981 did the plant have on its premises to your knowledge, any asbestos products?

A. Not that I know of.[5]

It is clear that the referee merely chose to believe Claimant's testimony over that of Mr. Volpe. He made a fair inference that there was still asbestos in the plant.

---

[1] Notes of Testimony from December 3, 1981 at 6, Reproduced Record (R.R.) at 67a.

[2] Notes of Testimony from April 1, 1981 at 16-17, R.R. at 52a-53a.

[3] Notes of Testimony from December 3, 1981 at 5, R.R. at 66a.

[4] Notes of Testimony from April 1, 1981 at 8, R.R. at 44a.

[5] Notes of Testimony from August 2, 1982 at 10, R.R. at 82a.

Of course, a referee may accept or reject the testimony of any witness in whole or in part, and credibility determinations are exclusively within the referee's discretion. *Borkowski v. Workmen's Compensation Appeal Board (John F. Kennedy Medical Center)*, 74 Pa. Commonwealth Ct. 310, 459 A.2d 1336 (1983).

Claimant testified that through working in the plant he came to recognize asbestos when he saw it.[6] The referee was well within his discretion in determining that there was still asbestos in the plant in 1980 despite Mr. Volpe's testimony. As this Court stated in *Houze Glass Corp. v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 537, 402 A.2d 1124 (1979):

> Emphasizing that Houze stopped manufacturing glass in 1971, the appellants say that the referee's finding that Mr. Cullen was exposed to a silica hazard after June 30, 1973 is not supported by substantial evidence. We disagree. Mr. Cullen testified that he was familiar with silica sand from his years of experience at Houze when it was making glass and that he saw bins of silica sand on Houze's premises in 1975. He also testified that powdered glass and sand blew about in the areas he was required to inspect as a night watchman and that until his retirement in 1975, he regularly swept areas where these particles accumulated. We are satisfied that Mr. Cullen's testimony sufficiently established an exposure to silica dust after June 30, 1973. . . . We recognize that the appellants adduced evidence which tended to show that the silica hazard had been eliminated from its plant before June 30, 1973—particularly that of tests made in 1977 which showed the presence of only small quanti-

---

[6] Notes of Testimony from April 1, 1981 at 15, R.R. at 51a.

ties of dust and testimony that no changes in conditions at the plant occurred after the time of Mr. Cullen's retirement. The referee might have drawn the inference from this and other of the appellants' evidence that Mr. Cullen was not exposed after June 30, 1973. He had, however, the other choice—that of accepting Mr. Cullen's account of seeing bins of silica sand and much dust in his work areas before his retirement. Since Mr. Cullen's evidence of exposure was substantial, it is beyond our power to direct the referee to make another choice.

*Id.* at 539-540, 402 A.2d at 1126 (citation omitted).

In the case at bar, Mr. Gourn's testimony of exposure to asbestos after January 1, 1980 is also substantial. As such, the Board's order must be affirmed.

### ORDER

The order of the Workmen's Compensation Appeal Board affirming an order of a referee which ordered Argonaut Insurance Company to pay compensation to John B. Gourn is affirmed.