637 A.2d 724

**ALLIANCEWALL CORPORATION and American Policyholders Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Anna TRACEY, Widow of Edward I. Tracey, Deceased), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 8, 1993.

Decided Jan. 28, 1994.

Frank L. Tamulonis, Jr., for petitioners.

John J. Speicher, for respondent.

Thomas A. Wilken, for intervenor, Kaiser Aluminium & Chemical.

Jane A. Lombard, for intervenor Liberty Mut. Ins. Co./Alliancewall.

John E. Domalakes, for intervenor Liberty Mut. Ins. Co./Eternit G.I.I.

Lori A. Kachmar, for intervenor, Birdsboro Steel Corp. and PMA Ins. Co.

Joseph R. Baranko, for intervenor Eternit GII Corp. and State Workmen's Ins. Fund.

Before McGINLEY, and PELLEGRINI, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This is a petition for review by the defendant employer, Alliancewall Corporation (Alliancewall), and its insurer, American Policyholders Insurance Company (American), from the decision of the Workmen's Compensation Appeal Board (Board) affirming an award of benefits to the claimant for disability and death due to bronchogenic carcinoma. This petition does not challenge the award *per se;* rather, this appeal challenges the assessment of the award against American.

The claimant's decedent, Edward I. Tracey, filed a lifetime claim seeking compensation for disability arising from lung cancer allegedly resulting from asbestos exposure in the

course of his employment at a plant in Port Carbon, Pennsylvania, known as the Mirawal Plant. Following his death on September 17, 1988, the decedent's widow, Anna Tracey, filed a fatal claim petition. The referee by decision dated June 19, 1992, awarded benefits in both the lifetime and fatal claims and assessed the award against Alliancewall and American. On appeal, the Board affirmed.

In October 1986, the claimant's decedent had been examined by Dr. Joseph A. Cable. Dr. Cable reported that the decedent had a history of chest pain and shortness of breath; he also had a smoking history of two to three packs per day for 20 years, but had not smoked for the previous four years. A chest x-ray revealed a nodular density on the right upper lobe measuring approximately four centimeters in diameter which was strongly suggestive of bronchogenic carcinoma.

The decedent was admitted to a hospital on November 3, 1986 for evaluation of the left-sided chest pain with the right upper lobe mass. He underwent a right upper lobectomy, whereby the tumor was resected and removed in its entirety. At the time of surgery, metastasis was noted to the lymph nodes.

Tracey thereafter underwent radiation therapy. He returned to work on January 2, 1987. However, there was further metastasis of the adrenal gland, femur, brain and spine, ultimately resulting in his death on September 17, 1988. His last day of employment at Alliancewall had been February 2, 1988.

The referee assessed an award against American, the insurance carrier for Alliancewall, on the date of the decedent's last day of employment. American's coverage had commenced on December 16, 1986, after the decedent's lung cancer had been diagnosed, confirmed and the tumor removed by surgery. It is the position of American in this appeal that the referee erred in disregarding the initial period of disability from November 3, 1986 through January 2, 1987 and, accordingly, in failing to assess the award against Liberty Mutual Insurance Company, which was the insurance carrier for

Alliancewall on the date the decedent's lung cancer was *diagnosed.*

The question raised in this case is simply whether an award can be assessed against American where the lung tumor and the metastasis, which resulted in the decedent's death, occurred prior to the onset date of American's coverage.

American challenges the Board's decision as erroneous because the testimony accepted as credible by the referee established that the decedent was exposed to asbestos, that his carcinoma was diagnosed, that his tumor was removed and that his disability had commenced prior to American's coverage. Reduced to its essence, American's argument is that, in a case such as this, a referee, in order to ascertain the responsible insurance carrier, is required to undertake an examination of whether the "last exposure" was causative. We disagree.

The Pennsylvania Workmen's Compensation Act (Act)[1] has specifically provided that certain defined criteria are to be observed in ascertaining the responsible employer based on exposure and duration of employment. *Hoosier Engineering Co. v. Workmen's Compensation Appeal Board (Winter)*, 153 Pa.Commonwealth Ct. 229, 620 A.2d 697 (1993). In *Hoosier Engineering,* the Court en banc (Doyle, J. dissenting) held that, to ascertain the liable employer under Section 301(c)(2) of the Act,[2] the workers' compensation authorities must determine the employer who provided the longest period of exposure (as opposed to the longest period of employment in a job exposing a claimant) to a hazardous substance. We held that the "liable employer is that which exposed the claimant for more than one year or more, if such employer exists, and if not ... the employer with *the longest period of exposed employment* of less than one year's duration within the 300–week period prior to disability." *Id.* at 234, 620 A.2d at 700 (emphasis in original).

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.
2. 77 P.S. § 411(2).

This Court in 1977, however, established the rule that the employer's insurance carrier which is on the risk at the last moment of claimant's exposure to the hazard must assume the obligation to pay the benefits for which the employer is liable. *Ertz v. Glen Nan, Inc.,* 29 Pa.Commonwealth Ct. 409, 371 A.2d 533 (1977).

American contends that the referee and the Board engaged in only "a superficial analysis" and "blindly followed" the rule enunciated in *Ertz* and *Bucyrus–Erie Company v. Workmen's Compensation Appeal Board (Gourn),* 106 Pa.Commonwealth Ct. 185, 525 A.2d 881 (1987), leading them to an absurd and unreasonable result here, since American was not on the risk until after the fatal carcinoma was diagnosed and removed. However, this Court in *Ertz,* in explaining the difference between the ascertainment of the *employer* responsible and the *insurer* responsible, said

> We note initially that Section 301(c)(2) of the Act imposes liability upon the employer on the basis of a last exposure "for a period of not less than one year." The reason for this durational requirement is not difficult to understand. While the Legislature clearly intended in the Act that liability for a single occupational illness not be apportioned among the various employers in the industry for whom an employe has worked over the years, it likewise manifested in Section 301(c)(2) its intention that an employer not be liable for an occupational illness to which it made, what the Legislature considered to be, a comparatively insignificant contribution. Such considerations are inapplicable to the situation of the insurance carrier. The Act imposes liability upon the employer for the role his business has played in causing an occupational illness, whereas the insurer's liability arises merely from its contractual undertaking to protect the employer from liability arising out of the employer's activities.

*Id.* 29 Pa.Commonwealth Ct. at 413, 371 A.2d at 535–536 (footnote omitted). Indeed, the facts and holding in *Ertz* demonstrate just how exacting the rule is. The claimant in that case had worked until 7 a.m. on the day when the

Rockwood Insurance Company policy expired at 12:01 a.m. and the State Workmen's Insurance Fund (Fund) provided coverage commencing at 12:01 a.m. The Court held that the last *moment* of exposure was the measure of the test to determine the insurance carrier responsible, not the last *calendar day*. We therefore held that the Fund was the responsible carrier. *Id.* at 414, 371 A.2d at 536.

In addition, *Ertz* has been specifically approved by the Supreme Court of Pennsylvania in *Insurance Company of North America v. Workmen's Compensation Appeal Board (Dettenmeyer)*, 504 Pa. 589, 475 A.2d 1323 (1984) and has been followed by this Court in *Bucyrus–Erie.*

In specific answer to American's argument that the result is unreasonable and absurd, we do not agree. The certainty provided by the "last exposure" test acts to avoid any introduction of causation issues where the contest is a question of which insurance company is responsible for coverage. Insurance policies are a matter of contract; they begin coverage on a certain date and end on a certain date. While in one case the "last exposure" rule may result in an "unfair" imposition on an insurance company that covered the risks for a short period of time where an employer contributed minimally to the cause of the injury, in another case that same insurance company may be the beneficiary of such a rule. In short, the policy underlying the test enunciated in *Ertz* and approved by the Supreme Court in *Insurance Company of North America* is one of certainty which rejects the notion of injecting the issue of how much damage was caused at a given time into cases where the question is which insurance company covered the risk.

■ American raises one further issue which is easily answered. It contends that there was no evidence of Tracey's exposure to asbestos after December 16, 1986. We have examined the record and find that the testimony of Tracey and Karl Stineling, who performed asbestos air sampling tests at the Mirawal Plant, as well as the tests themselves, provide

ample evidence of Tracey's exposure after December 16, 1986. The referee's finding of fact number twenty reads:

> The Referee finds that the decedent, Edward Tracey, was subjected to asbestos while employed with the numerous defendants commencing in 1964 and continuing until February 2, 1988. This Referee finds that the testimony of the witnesses for the claimant is competent, credible and worthy of belief and is accepted by this Referee in its entirety.

The order of the Board is affirmed.

## ORDER

AND NOW, this 28th day of January, 1994, the order of the Workmen's Compensation Appeal Board, No. A92–1721, dated June 1, 1993, is hereby affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. By holding that American Policyholders Insurance Company (American) is liable for the payment of occupational disease death benefits for a condition that was known and the prognosis certain at a time when another carrier was already paying benefits, the majority reaches a result the General Assembly did not intend when it enacted Section 301(c)(2) of The Workmen's Compensation Act.

On November 3, 1986, Decedent was positively diagnosed with a work-related occupational disease resulting from the exposure to asbestos that caused a spreading metastasis. On that date, Liberty Mutual Insurance Company (Liberty Mutual) was Employer's worker's compensation liability insurance carrier. Decedent underwent a right upper lobectomy on November 3, 1986, and then underwent radiation therapy. On January 2, 1987, Decedent returned to work and remained until February 2, 1988. When he died on September 17, 1988, American was Employer's workmen's compensation liability insurance carrier, having taken over from Liberty Mutual on December 16, 1986. However, it was Liberty Mutual that

paid all medicals and compensation from the date of diagnosis until the date of Decedent's death.

Claimant, Decedent's widow, filed a fatal claim petition naming both American and Liberty Mutual as liable carriers. Because American was the carrier on Decedent's last day of work, the referee imposed liability on it for payment of benefits. The Board and the majority affirmed based on our decision in *Ertz v. Glen Nan, Inc.* 29 Pa.Commonwealth Ct. 409, 371 A.2d 533 (1977), where under Section 301(c)(2) of the Act[1] we refused to apportion liability between insurance carriers for the period that the employee was at risk, *i.e.*, exposed to the occupational hazard, and established the rule that the employer's insurance carrier that is at risk is the one providing coverage at the last moment of claimant's exposure to the hazard. The majority here goes on to extend the principle of non-apportionment during a period of risk to when the risk is over, a diagnosis of the occupational disease has been made and compensation is being paid during the first insurer's coverage.

The question here is whether the rule of non-apportionment applies when a carrier who has admitted liability for a compensable occupational disease is no longer the carrier when the occupational disease results in death. In similar circumstances where one carrier admits liability for an occupational disease, but death results from that disease while another carrier provides coverage, we have held that under Section 301(c), death benefits are "merely a continuum of the previously admitted or established liability to pay compensation."

1. The relevant portion of Section 301(c)(2) of the Act provides:

    The employer liable for compensation provided by section 305.1 of section 108, subsections (k), (*l*), (m), (o), (p) (byssinosis) or (q) shall be the employer in whose employment the employee was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest employment in which the employe was exposed to the hazards of the disease claimed.

    77 P.S. § 411(2).

*Duffy v. City of Scranton/Fire Dept.,* 112 Pa.Commonwealth Ct. 537, 541, 535 A.2d 756, 758 (1988). That holding is applicable to when an insurer has already admitted liability by compensating the occupational disease from which the decedent ultimately dies despite a later change in coverage. The proper application of this principle is illustrated when there is a change in insurance carriers on the injury side of the Act where a recurrence of a compensable injury manifests itself during coverage provided by a subsequent carrier. Under such circumstances, we have held the carrier liable for the initial injury to remain liable for the recurrence. *City of Williamsport v. Workmen's Compensation Appeal Board (Schmuck),* 55 Pa.Commonwealth Ct. 618, 423 A.2d 817 (1980). Where, as here, death is the end result of an admitted and compensable occupational disease, the result should be the same.

Liberty Mutual began making compensation payments from the moment Decedent was diagnosed with the disease. I can see no reason to relieve Liberty Mutual from coverage for death benefits merely because American happened to be the carrier on his last day of work. When Decedent underwent surgery and was unable to work a compensable occupational disease was manifest and the obligation of the carrier became fixed. Just because Decedent went back to work does not relieve Liberty Mutual of liability any more than if he went back to work at a light duty job at less pay. Once a carrier compensates for an occupational disease, the carrier is always obligated for all consequences of that disease, including, an *albeit* independent, death benefit claim. See, *Duffy, supra.*

Accordingly, I would reverse the order of the Board and enforce the award in its entirety against Liberty Mutual.