FILED

November 12 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0037

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 386

LIBERTY NORTHWEST INSURANCE CORPORATION ,

       Petitioner and Appellant,

  v.

MONTANA STATE FUND,

       Respondent and Appellee,

IN RE:  CLAIM OF GARY MITCHELL,

       Claimant/Intervenor and Appellee.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2007-1827
                Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Larry W. Jones, Law Offices of Larry W. Jones, Missoula, Montana

       For Appellee Montana State Fund:

       Daniel B. McGregor, Montana State Fund, Helena, Montana

       For Intervenor and Appellee Gary Mitchell:

       Steven S. Carey, David T. Lighthall, Carey Law Firm, P.C.,
       Missoula, Montana

Submitted on Briefs:  August 5, 2009

Decided:  November 12, 2009

Filed:

_____
                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Liberty Northwest Insurance Corporation (Liberty) appeals from a decision of the Workers' Compensation Court (WCC) finding it liable for the low-back condition of Gary Mitchell (Mitchell).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     On September 2, 1994, Mitchell suffered an industrial injury to his low back in the course of his employment with Washington Construction Company in Missoula, Montana.  Montana State Fund (State Fund) accepted liability for Mitchell's industrial injury and paid appropriate medical and wage-loss benefits.  On or about January 6, 2006, Mitchell filed a claim with Liberty, alleging that he had suffered an occupational disease (OD) involving his low back while working for Industrial Services, Inc. (Industrial), of Missoula.  Industrial was enrolled in Compensation Plan No. 2 of the Workers' Compensation Act (Act) at the time of the alleged injury and was insured by Liberty.  Liberty denied liability for Mitchell's claim on February 6 and March 29, 2006.

¶3     In May 2006, Mitchell filed a claim with State Fund alleging he had suffered an OD to his low back in 2002 while employed with Environmental Contractors, LLC (Environmental), in Missoula.  At the time of the alleged OD exposure, Environmental was enrolled under Compensation Plan No. 3 of the Act and insured by State Fund.  State Fund denied liability as well.  Both Liberty and State Fund then continued to deny liability for Mitchell's claim, although Liberty paid benefits to Mitchell under a reservation of rights in accordance with *Belton v. Carlson Transp.*, 202 Mont. 384, 658

2

P.2d 405 (1983), *superseded by statute on other grounds as recognized in In Re Abfalder*, 2003 MT 180, ¶ 14, 316 Mont. 415, 75 P.3d 1246.

¶4 After the denial of his claims, Mitchell filed a claim with the WCC. Mitchell contended that he suffered an OD while working for Industrial and that Liberty was responsible for his workers' compensation claim. The WCC held a trial on July 29, 2008. The WCC received testimony from Mitchell and found him to be a credible witness. The WCC also received sworn statements, depositions, and medical evidence from two doctors who examined Mitchell, Dr. John C. Schumpert (Dr. Schumpert) and Dr. Randale C. Sechrest (Dr. Sechrest).

¶5 Mitchell has worked in heavy labor employment his entire life, starting with the logging industry in his teens. Mitchell also worked as a general laborer for several years before becoming an asbestos abatement worker. Mitchell performed abatement work from 1996 through 2005. In 2002, Mitchell worked for Environmental on a job in Virginia. The work involved standing and stooping in awkward positions while applying a liner to the top of a tank. Mitchell's back pain worsened in 2002 and he never recovered to pre-2002 levels. However, he did continue to work.

¶6 Mitchell worked as a laborer for Industrial from August 10, 2005, to October 11, 2005. He did not miss a day of work during this time, and worked on a suspension bridge project in Missoula. Mitchell carried lumber, performed concrete work, repaired fences, and performed security duties. Mitchell later testified to the WCC that his back condition worsened during the time he was employed by Industrial from August to October 2005, and he was subsequently unable to work.

3

¶7 Dr. Schumpert performed an independent medical examination (IME) on Mitchell at Liberty's request on February 27, 2006. In his report, Dr. Schumpert concluded that Mitchell's employment with Industrial was not the major contributing cause of Mitchell's low-back condition, but that it was instead attributable to accumulation over 30 years of heavy labor. The objective medical findings upon which Dr. Schumpert based this conclusion included tenderness to palpation over the right posterior and superior iliac spine, right para-lumbar muscles, right gluteal muscles, and spinous processes. Dr. Schumpert also concluded that Mitchell showed evidence of mild-to-moderate loss of range of motion and had a positive Patrick's test on the right with cramping in the gluteal muscles. Dr. Schumpert testified he could "theoretically" assign at least 1% causation of Mitchell's low back to his work at Industrial from August to October of 2005, because he performed heavy-labor job duties. However, Dr. Schumpert could not state to a reasonable degree of medical certainty the exact percentage of causation to assign to Mitchell's employment at Industrial, and further opined that it would be difficult to say which portion of Mitchell's employment history was the primary cause of his low-back condition. Dr. Schumpert did, however, opine that Mitchell's lifetime of employment would be the major contributing cause of his OD.

¶8 Dr. Sechrest was Mitchell's treating physician. On August 9, 2007, Dr. Sechrest sent a letter to Mitchell's attorney, opining that Mitchell suffers from an OD because his low-back condition substantially changed during his work with Environmental in 2002. Based on his evaluation of Mitchell's medical history and records, Dr. Sechrest opined that Mitchell's on-going employment from 2002 through October 2005, contributed to

4

some degree to the development of his OD. Dr. Sechrest further opined that Mitchell's employment from August to October 2005 with Industrial contributed, though not very much, to his low-back condition.

¶9 In its conclusions of law, the WCC determined that the 2005 version of the Act would apply since both Drs. Sechrest and Schumpert agreed that his work at Industrial in 2005 contributed to his current low-back condition. *See Fleming v. Intl. Paper Co.*, 2008 MT 327, ¶ 27, 346 Mont. 141, 194 P.3d 77. The WCC then considered whether Mitchell was suffering from an OD and the major contributing cause of the OD. The WCC noted that an OD is defined as "harm, damage, or death arising out of or contracted in the course and scope of employment caused by events occurring on more than a single day or work shift." Section 39-71-116(20), MCA (2005). An OD must be established by objective medical findings that the events occurring on more than a single day or work shift are the major contributing cause of the OD in relation to other factors that may contribute to an OD. Section 39-71-407(9)(a) and (b), MCA (2005). A "major contributing cause" is defined as "a cause that is the leading cause contributing to the result when compared to all other contributing causes." Section 39-71-407(13), MCA (2005). Under this standard and in light of the objective medical evidence, the WCC concluded that Mitchell suffered from an OD whose major contributing cause was Mitchell's lifetime of heavy-labor employment.

¶10 The WCC then turned to the question of which employer was liable for Mitchell's low-back condition. Under § 39-71-407(10), MCA (2005), "[w]hen compensation is payable for an occupational disease, the only employer liable is the employer in whose

employment the employee was last injuriously exposed to the hazard of the disease." The WCC applied this statute to the evidence before it as follows:

> While employed by Liberty Northwest's insured from August through October 2005, Mitchell carried lumber, performed concrete work, repaired fences, and performed security duties. Mitchell testified that his back condition worsened during this time. Drs. Sechrest and Schumpert agreed that Mitchell's employment with Liberty Northwest's insured contributed to some degree to his present low-back condition. I therefore conclude that Mitchell was last injuriously exposed to the hazard of his OD at the time of his employment with Liberty Northwest's insured. Pursuant to § 39-71-407(10), MCA, therefore, Liberty Northwest is liable for Mitchell's low-back condition.

¶11 Liberty now appeals from the WCC's decision. Liberty asserts that the WCC incorrectly interpreted the applicable workers' compensation statutes, and that there was not substantial credible evidence to support the conclusion that Mitchell was last injuriously exposed to the hazard of his OD while working for Industrial. Both State Fund and Mitchell urge us to affirm. We state the issue presented by this appeal as follows:

¶12 *Did the WCC apply the correct legal standard in determining when Mitchell suffered his last injurious exposure to the hazard of his occupational disease, and was the WCC's decision supported by substantial credible evidence?*

**STANDARD OF REVIEW**

¶13 We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence and its conclusions of law to determine whether they are correct. *Lanes v. Mont. State Fund*, 2008 MT 306, ¶ 16, 346 Mont. 10, 192 P.3d 1145. Substantial credible evidence is evidence that a reasonable mind might accept as adequate

6

to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Lanes*, ¶ 16.

## DISCUSSION

¶14 Liberty argues the WCC incorrectly interpreted and applied the 2005 version of the Act in concluding it was liable for Mitchell's OD claim. Liberty contends that the last employer in a series of employers is liable for an OD only if the last employment materially or substantially contributed to the OD. Liberty argues that the WCC erroneously concluded the "last injurious exposure rule" required only proof of "some degree" of OD causation during the claimant's last employment—however miniscule—and that the standard utilized by the WCC is not supported by case law under the 2005 Act. Liberty asserts that under the prior decisions of *Caekaert v. State Compensation Mut. Ins. Fund*, 268 Mont. 105, 885 P.2d 495 (1994) and *Lanes*, the last injurious exposure will trigger liability for an OD claim only if objective medical findings establish that the employment materially or substantially contributed to the claimant's condition. When the correct legal standard is applied, Liberty argues that the determination of liability is not supported by substantial credible evidence because the objective evidence does not establish that Mitchell's OD exposure while working for Industrial materially or substantially contributed to his condition. Instead, Liberty argues that State Fund's insured Environmental is liable for Mitchell's condition. Accordingly, Liberty asks this Court to reverse the WCC's decision and find that State Fund is liable for Mitchell's OD claim.

7

¶15    State Fund and Mitchell urge us to affirm.  State Fund argues that the WCC did not err in concluding that Mitchell had suffered an OD, and correctly determined that Mitchell's last injurious exposure to the hazard of the OD occurred while he was working for Industrial.  In this connection, State Fund argues *Caekaert* and *Lanes* do not address the standard for evaluating the "last injurious exposure" rule in the present context, because these cases concerned "recurrent disabilities"—i.e., situations in which a pre-existing OD claim had been accepted by a prior insurer, and the question was whether a subsequent employment gave rise to a second OD claim.  In this case, however, State Fund notes that Mitchell's OD was undiagnosed and developed throughout his employment with Industrial and Environmental, and that no OD claim had previously been filed.  State Fund asserts that this Court has not in fact clarified the requisite exposure for application of the "last injurious exposure" to the circumstances at bar. State Fund urges this Court to conclude that a last injurious exposure has occurred when it is "permanent" in nature.  In this case, State Fund argues this standard was satisfied because after Mitchell's exposure at Industrial he was no longer able to work due to his OD.

¶16    Mitchell more or less presents the same argument as State Fund.  Mitchell does not, however, argue for a standard under the last injurious exposure rule which requires that exposure be permanent in nature.  Instead, Mitchell argues that the WCC's reliance on a standard that he was exposed "to some degree" is sufficient to constitute an exposure.  Mitchell argues this standard was articulated in a previous WCC decision,

*Fleming v. Intl. Paper Co.*, 2005 MTWCC 34, and is also consistent with treatises covering the area of workers' compensation law.

¶17    We agree with State Fund that *Caekaert* and *Lanes* do not cover the situation at bar. In *Caekaert*, a claimant (Caekaert) suffered the work-related OD of carpal tunnel syndrome and filed a workers' compensation claim. Liability was accepted by the insurer (State Fund), and Caekaert had surgery for the condition. After surgery, Caekaert worked for other employers. Years later, Caekaert's carpal tunnel syndrome returned and he underwent surgery a second time. Caekaert submitted his medical expenses to State Fund, which denied liability. The question before the Court in that case was whether the return of Caekaert's carpal tunnel syndrome was a recurrence of the original OD for which State Fund had accepted liability, or whether the onset of these symptoms was due to his subsequent work. *Caekaert*, 268 Mont. at 111, 885 P.2d at 499. Although we considered the "last injurious exposure" rule in determining whether State Fund or a subsequent insurer was liable for Caekaert's condition, it was in a context wholly distinguishable from that presented here. We held in *Caekaert* that for the last injurious exposure rule to apply there must be evidence of a second injury or injurious exposure that materially or substantially contributed to Caekaert's second set of carpal tunnel symptoms. *Caekaert*, 268 Mont. at 111-12, 885 P.2d at 499. This holding was limited to the situation where a compensable OD has already been established with respect to an insurer, because an original insurer remains liable for an OD "if it is a direct and natural result of a compensable primary injury, and not the result of an independent intervening cause attributable to the claimant." *Caekaert*, 268 Mont. at 112, 885 P.2d at 499. In

9

other words, once causation and liability for an OD has already been established, only an intervening cause will break the chain of liability with respect to the original insurer. Here, by contrast, original liability for Mitchell's OD was first established by the WCC in <u>this</u> case and the *initial* assignment of liability is the question before the Court. Thus, *Caekaert* provides no guidance.

¶18    *Lanes* is inapplicable for largely the same reasons. In that case, claimant Lanes had suffered an OD to his knee while working as an electrician. State Fund had accepted liability for the claim and paid for knee surgery. *Lanes*, ¶ 3. After surgery, Lanes began working as a minister and claimed to develop further knee problems. The question was whether the aggravation was attributable to Lanes' work as a minister, or was instead attributable to the original knee condition for which State Fund had already accepted liability. *Lanes*, ¶¶ 10-12. The WCC concluded that Lanes' duties as a minister only constituted a "temporary" aggravation of his knee condition, and did not constitute an injurious exposure. *Lanes*, ¶ 29. Our analysis in *Lanes* was predicated upon the existence of an underlying OD which had already been diagnosed. *See Lanes*, ¶ 36. Again, this case concerns the determination of initial liability for Mitchell's OD claim. Because Mitchell does not have an underlying OD claim for which liability has already been established, *Lanes* provides no guidance.

¶19    The question currently before the Court is a matter of first impression in Montana. We have not yet considered the quantum of proof required under the "last injurious exposure" rule to establish initial liability for an OD claim when a claimant has worked

10

for successive employers, and was arguably exposed to the hazard of the OD during each employment. However, the WCC has previously addressed this issue.

¶20 In *Fleming,* the WCC was confronted with an issue very similar to the one now before the Court. Claimant Fleming had been diagnosed with an OD related to asbestos exposure after his retirement. Fleming had arguably been exposed to the hazard of his OD during two different employments. The question was which employment constituted his last injurious exposure. *Fleming*, ¶ 47 (WCC decision). The WCC used the following standard to evaluate this issue:

> "Traditionally, courts applying the last injurious exposure rule have not gone on past the original finding of some exposure to weigh the relative amount or duration of exposure under various carriers and employers. As long as there was some exposure of a kind that could have caused the disease, the last insurer at risk is liable for all disability from that disease. Thus, insurers or employers who have been at risk for relatively brief periods have nevertheless been charged with full liability for a condition that could only have developed over a number of years. In one instance, the carrier had the misfortune to assume coverage at midnight during the last 11:00 P.M. to 7:00 A.M. shift worked by an employee who subsequently filed a claim for disability caused by anthracosilicosis. The insurer was held liable for the entire amount of the claimant's benefits despite its only being on the risk for seven hours.
>
> In contrast to this traditional rule, however, are decisions such as that in *Busse v. Quality Insulation*, [322 N.W.2d 206 (Minn. 1982),] in which the Minnesota Supreme Court took notice of medical testimony to the effect that there is a "lag time" of five to ten years between exposure to asbestos and the development of asbestosis. The court accepted this testimony in support of a conclusion that the claimant's exposure under the last insurer, who had been at risk for only two months, was not a "substantial contributing cause" of death. Other courts have also held that in order to impose liability on the insurer who was last at risk, the exposure during its period of risk must have been of such length or degree that it could have *actually* caused the disease."

*Fleming*, ¶ 51 (WCC decision) (quoting 9 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 153.02 [7][a], 153-19-20 (2004) (footnotes omitted in quotation)).

¶21 Based on this standard, the WCC in *Fleming* denied a motion for summary judgment filed by one of the insurers because the extent of exposure would be an issue of fact to be determined at trial. *Fleming*, ¶ 53 (WCC decision). This Court affirmed the WCC's decision, but did not pass judgment on whether the standard articulated in *Larson's* was the correct one for evaluating a last injurious exposure among a succession of employments in order to attribute liability for the initial onset of an OD. *See Fleming v. Intl. Paper Co.*, 2008 MT 327, ¶ 30, 346 Mont. 141, 194 P.3d 77.

¶22 As the citation from *Larson's* indicates, jurisdictions differ on the application of the last injurious exposure rule. As noted above, some courts require that the exposure be a substantial contributing cause of the OD before liability can be assigned to an employer under the last injurious exposure rule. *See e.g. Fluor Alaska, Inc. v. Peter Kiewit Sons' Co.*, 614 P.2d 310, 312-13 (Alaska 1980); *Polaschek v. Asbestos Products, Inc.*, 361 N.W.2d 37, 39 (Minn. 1985). Other jurisdictions require a lower degree of causation. The North Carolina Supreme Court, for instance, has interpreted "last injurious exposure" to mean " 'an exposure which proximately augmented the disease to any extent, however slight.' " *Rutledge v. Tultex Corp.*, 301 S.E.2d 359, 362-63 (N.C. 1983) (quoting *Haynes v. Feldspar Producing Co.*, 22 S.E.2d 275, 277 (N.C. 1942)). The South Dakota Supreme Court expressed its last injurious exposure rule as follows:

> "When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation."

*Baier v. Dean Kurtz Const., Inc.*, 761 N.W.2d 601, 606-07 (S.D. 2009) (quoting *Paulson v. Black Hills Packing Co.*, 554 N.W.2d 194, 196 (S.D. 1996)).

¶23    By contrast, other jurisdictions do not require a claimant to prove an actual causal connection between the exposure and the OD, but rather require him or her to simply demonstrate that the exposure was of a kind which could have caused the OD.  In *SAIF Corp. v. Hoffman*, 91 P.3d 812 (Or. App. 2004), the Oregon Court of Appeals explained that the "last injurious exposure" rule is a both a rule of proof and rule of assignment of responsibility which "allows a claimant to prove the compensability of a condition by proving that the condition resulted from employment without having to prove the degree, if any, to which exposure to disability-causing conditions at a particular employment actually caused the claimant's condition."  *SAIF Corp.*, 91 P.3d at 813.  If a claimant chooses to rely upon this rule, "full responsibility falls presumptively to the last employer (before the onset of disability or treatment) that exposed the claimant to working conditions of the kind that could cause the disability."  *SAIF Corp.*, 91 P.3d at 813-14; *see also Wood v. Harry Harmon Insulation*, 511 So.2d 690, 693 (Fla. 1 Dist. App. 1987); *Olivotto v. DeMarco Bros. Co.*, 732 N.W.2d 354, 365 (Neb. 2007); *Reese v. CCI Const. Co.*, 514 S.E.2d 144, 146 (S.C. App. 1999).  This approach is sometimes referred to as the "potentially causal" standard.  *See New Portland Meadows v. Dieringer*, 973 P.2d 352, 353 (Or. App. 1998).

¶24   In sum, the application of the last injurious exposure rule in the present context runs the gamut from a requirement that the exposure was a "substantial contributing cause" of the OD to a presumption that the exposure gives rise to liability for the OD so long as the working conditions at the time of the exposure were of the kind which could cause the OD.   We conclude that the "potentially causal" standard is consistent with § 39-71-407(10), MCA (2005), and will be applied in this and future cases in Montana. Under this approach, the claimant who has sustained an OD and was arguably exposed to the hazard of an OD among two or more employers is not required to prove the degree to which working conditions with each given employer have actually caused the OD in order to attribute initial liability.   Instead, the claimant must present objective medical evidence demonstrating that he has an OD and that the working conditions during the employment at which the last injurious exposure was alleged to occur, were the type and kind of conditions which could have caused the OD.   As the Nebraska Supreme Court recognized in *Olivotto*, proving that an exposure is of a type which could cause the OD does demonstrate, in a certain sense, that the exposure bears a casual relationship to the onset of the OD.   *See Olivotto*, 732 N.W.2d at 365 (discussing *Mathis v. State Accident Insurance Fund*, 499 P.2d 1331 (Or. App. 1972)). This rule applies, of course, only in those situations where an OD is being diagnosed for the first time, as in the case at bar and the WCC's decision in *Fleming*.   In cases where an OD has already been diagnosed, liability for the OD has been determined, and the question is whether a recurrence of the OD condition is attributable to the original employer or is attributable to a second

14

employer based on an intervening exposure to the hazard of the OD, the *Caekaert* and *Lanes* approach will continue to apply.

¶25 Because Mitchell demonstrated that he had an OD and that the working conditions at Industrial were the same type and kind of heavy-duty labor which led to the development and diagnosis of his OD, this exposure provided a basis upon which liability could be assessed against Liberty pursuant to § 39-71-407(10), MCA (2005). Indeed, the WCC's determination that Mitchell's exposure at Industrial contributed "to some degree" to his OD was simply another way of stating that this exposure was of the type and kind that could have caused the OD. Accordingly, the WCC's determination of liability based on Mitchell's exposure while working for Industrial was supported by substantial credible evidence. The objective medical evidence established that while Mitchell's work with Industrial was not the major contributing cause of his OD, it was of the same type and kind which led to the development and eventual diagnosis of that OD. *See* Opinion, ¶¶ 7-8, 10. Thus, this exposure could have caused Mitchell's OD. Under our application of the last injurious exposure rule, this evidence is sufficient to support the WCC's determination that Mitchell's last injurious exposure to the hazard of the OD occurred during his employment with Industrial.

**CONCLUSION**

¶26 We affirm the WCC. We further hold that for purposes of the initial liability determination of an OD where two or more employers are potentially liable, the "last injurious exposure" to the hazard of the OD occurs during the last employment at which

15

the claimant was exposed to working conditions of the same type and kind which gave rise to the OD.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶27 I concur with the Court's determination to affirm the judgment of the Workers' Compensation Court, but would adopt a different standard for application of § 39-71-407(10), MCA (2005), the "last injurious exposure" provision.

¶28 In cases where a worker has developed an occupational disease (OD) while working for multiple employers, the Court concludes that the "last injuriously exposed" requirement is satisfied by use of a "potentially casual" standard. Opinion, ¶ 24. Under this standard, objective medical evidence of an OD need only be accompanied by proof that "the working conditions during the employment at which the last injurious exposure was alleged to occur, *were the type and kind of conditions which could have caused an OD*." Opinion, ¶ 24 (emphasis added).

¶29 I believe the "potentially casual" standard fails to sufficiently account for and apply the word "injuriously" within the "last injuriously exposed" statutory requirement.

16

*See* Section 39-71-407(10), MCA. Under the "potentially causal" standard, there is no requirement to show that the last exposure actually resulted in injury. The standard effectively reads out the word "injuriously" from the statute by only requiring proof that the "type and kind of [working] conditions" of the last employment "*could have* caused" the worker's OD. Opinion, ¶ 24 (emphasis added). "Anything could happen" is a common testimonial comment, but is usually meaningless. Yet, that appears to be the sufficiency of the evidence necessary to establish a last injurious exposure under this standard.

¶30 The facts of *Ertz v. Glen Nan, Inc.*, 371 A.2d 533 (Pa. Commw. 1977), provide a good example. Ertz worked as an anthracite coal miner for Glen Nan, Inc. (Glen). *Ertz*, 371 A.2d at 534. On February 21, 1974, Ertz began work for Glen at 11 p.m. and ended work at 7 a.m., February 22, 1974. *Ertz*, 371 A.2d at 534. During Ertz's shift, Glen's insurance coverage with Rockwood Insurance Company ended at 12:01 a.m., February 22, and shifted to The State Workmen's Insurance Fund (Pennsylvania Fund). *Ertz*, 371 A.2d at 534. After completing his shift on the morning of February 22, Ertz claimed an OD of anthracosilicosis. *Ertz*, 371 A.2d at 534.

¶31 Applying the "potentially causal" standard to the facts of *Ertz*, the Pennsylvania Fund's coverage for seven hours of Ertz's employment would result in liability for Ertz's OD claim, irrespective of whether the seven hours had caused any further injury to Ertz. Ertz performed the same job, thereby satisfying the "type and kind" requirement for working conditions, with only the requirement that the seven hour shift "could have

17

caused" his OD. The lower causal standard under the "potentially causal" standard necessarily shifts a disproportionate burden to the last insurer.

¶32 I recognize that courts have reached differing conclusions when wrestling with this issue, and that there may not be an approach which is clearly superior. However, it is important to note that the question here is not whether the worker should receive OD benefits. That is governed by § 39-71-407(9), MCA, under which the worker is provided benefits upon establishing that he suffers from a work-related disease. Rather, the question here is *which insurer* should pay. In that regard, I recognize that the "last injurious exposure" rule is itself a liability-shifting device which will bring "harsh result[s] in a particular case," in exchange for rough equity among insurers when the system is considered as a whole. 82 Am. Jur. 2d *Workers' Compensation* § 200 (2003). However, I believe the "potentially causal" standard stretches that policy too far.

¶33 I would adopt the proposal offered by Appellee State Fund, that liability under the "last injuriously exposed" rule not pass to the subsequent insurer unless a permanent aggravation or contribution to the OD is established. I believe this is consistent with the plain meaning of the word "injurious" in the statute. *See Shelby Distributors, LLC v. Mont. Dept. of Revenue*, 2009 MT 80, ¶ 18, 349 Mont. 489, 206 P.3d 899 (When interpreting statutes, we use the "plain meaning" of the language.). In its definition of "injurious exposure," *Black's Law Dictionary* 789 (Bryan A. Garner ed., 7th ed., West 1999), offers that "[a]n employer may be found liable for *harm resulting* from injurious exposure." Here, the concept of "harm" is similar to the concept of an "injurious" exposure. Such a rule would also be consistent with the manner in which we have

18

applied the "last injurious exposure" rule in the context of recurrent disabilities. *See Lanes v. Mont. State Fund*, 2008 MT 306, ¶ 38, 346 Mont. 10, 192 P.3d 1145 (rejecting an argument that a "temporary aggravation" establishes a "last injurious exposure" within the context of recurrent disabilities).

/S/ JIM RICE