No. 87-198

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

GLENN EDWARD STANGLER,

        Claimant and Appellant,

  -vs-

ANDERSON MEYERS DRILLING COMPANY,
        Employer,
    and
HOME INSURANCE COMPANY,

        Defendant and Respondent.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Herndon, Harper & Munro; James G. Edmiston, Billings, Montana

    For Respondent:

        Marra, Wenz, Johnson & Hopkins; David E. Bauer, Great Falls, Montana

Submitted on Briefs: Sept. 17, 1987

Decided: November 24, 1987

Filed: NOV 24 1987

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Glenn Edward Stangler appeals the judgment of the Workers' Compensation Court, which found that Stangler suffered a new injury while working out of state and that Home Insurance Company was not responsible for payment of Workers' Compensation benefits.

We affirm the order of the Workers' Compensation Court.

Claimant raises three issues for our review:

1. Whether defendant as the first insurer in a successive injury case should escape liability where; the alleged second injury occurred in North Dakota; the second employer and insurer are not present before the Workers' Compensation Court; and, the North Dakota Bureau of Workers' Compensation has denied a claim for the alleged second injury.

2. Whether the evidence was sufficient to support the Workers' Compensation Court's conclusion that the claimant had reached maximum healing after his industrial injury of January 24, 1982.

3. Whether the Workers' Compensation Court erred by failing to hold that the Home Insurance Company waived its defenses by agreeing to pay benefits on a non-acceptance basis pursuant to § 39-71-608, MCA.

On January 24, 1982, while working in the course and scope of his employment, Stangler injured his lower back. At that time, Stangler was employed as an assistant driller for Meyers Drilling Co. in Helena, Montana. Stangler worked for two more days following his injury but then, upon the advice of John Harlan, M.D., a general practitioner in Helena, returned to his home in Grenora, North Dakota. After 21 days

off work, Stangler returned to work in Montana for approximately one week. Pain in his back caused him to seek further medical advice from his family doctor in Williston, North Dakota. Stangler again attempted to return to work but due to pain was forced to terminate his job with Meyers Drilling on February 22, 1982.

Stangler's family doctor referred him to Dr. Mattheis, a neurosurgeon in Bismark, North Dakota. Dr. Mattheis examined Stangler on April 7, 1982, diagnosing his injury as an acute lumbar strain, with the possibility of a herniated mid-line disc. On April 27, 1982, Dr. Mattheis ordered a CT scan for Stangler. The CT scan indicated a "bony spur lateral posterior margin of L4 which may be deforming the nerve root at this level with disc space minimally bulging at the L4-5 level with herniated disc at the L5-S1 level anterior and in the mid-line." Dr. Mattheis recommended a surgical procedure for Stangler. Dr. Mattheis later testified by deposition that upon review of the CT scan report he did not know what prompted him to recommend surgery as he saw nothing indicating any serious abnormalities.

After seeing Dr. Mattheis, Stangler saw Dr. Roger Kennedy, another neurosurgeon, for a second opinion concerning the necessity of surgery. Dr. Kennedy examined Stangler on May 20, 1982, for approximately one-half hour. Based on that examination, Dr. Kennedy did not advise surgery for Stangler. In fact, when requested to clarify Stangler's condition, Dr. Kennedy stated that he could find no structural pathology and assigned a 0% whole body permanent physical impairment rating. He later clarified this rating by saying that an impairment rating does not account for pain. Any pain Stangler was experiencing would limit him according to his individual tolerance for pain and the job he has expected to perform. Based on Dr. Kennedy's report,

defendant terminated Stangler's temporary total disability benefits of $241.00 per week on September 27, 1982.

Stangler testified that at this point he believed that he was medically released to return to work. Also, he had to go back to work to pay bills and provide for his family. Stangler testified that although in constant pain, he returned to very strenuous work on the oil rigs in North Dakota. He had to lift 50-80 pound bags of chemicals on a frequent basis. Stangler worked for three different drilling companies between the fall of 1982 and June 1, 1984, when his legs gave out while lifting a 50 pound sack. He experienced severe back pain and reported the injury to his employer. The report of this injury was never documented in the foreman's logbook, however. At the time of this injury, Stangler was employed by Grace Bomac Drilling. Following the second injury, he did not miss any work, but states that the pain was constant.

On September 17, 1984, Stangler saw Dr. Frank Ise, an orthopedic surgeon. A CT scan was performed on Stangler which did not show anything which was "clinically significant." Dr. Ise fitted Stangler with a lumbosacral support on October 3, 1984. Dr. Ise saw Stangler again on November 3, 1984, December 31, 1984, and January 16, 1985. According to Stangler, continued pain made his condition dangerous to himself and fellow employees. At Stangler's request, Dr. Ise recommended that Stangler quit work for Grace Bomac. On July 31, 1985, a myelogram was performed on Stangler. That test was also found to be within normal limits.

Stangler contacted Home Insurance Co. (Home) in March, 1985. On March 21, 1985, Home agreed to pay temporary total disability benefits on a non-acceptance basis effective February 27, 1985, the date Stangler quit working for Grace

Bomac. Home requested that Stangler file a claim with North Dakota's Compensation Bureau with the understanding that such a filing would not amount to an admission by Stangler of North Dakota's jurisdiction of his claim in Montana.

Stangler's North Dakota claim was denied by the North Dakota's Workmens' Compensation Bureau on the grounds that Stangler did not prove that an injury actually occurred on June 1, 1984, while employed by Grace Bomac Drilling and that any injury causing disability was more likely than not related to the first injury on January 24, 1982 in Montana.

A hearing was then held before the Montana Workers' Compensation Court to determine Stangler's benefits. The court held that a preponderance of the evidence supported the conclusion that claimant had reached maximum healing after the January 24, 1982, injury. The North Dakota injury of June 1, 1984, was deemed a "successive" injury, and all benefits to Stangler were denied.

As claimant's second issue of whether Stangler had reached maximum healing is deemed most critical to this appeal, we will address it first in this opinion.

In Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405, this Court adopted the idea of "maximum healing" and "successive injuries" in order to more fairly assess which employer is responsible for an employees on-the-job injury. Maximum healing means that following a compensable injury a claimant has reached a point constituting the end of a healing period. It does not mean the person is free of symptoms such as pain or objective signs. Belton, 658 P.2d at 408.

The rule in Belton controls a situation where an employee has been injured more than once and different employers' insurance carriers are at risk for the separate injuries. If the first injury has not reached maximum

healing, the insurer at risk at the time of the first injury will be responsible for the second injury as well. If the claimant is medically stable or has reached maximum healing, the insurer at risk at the time of the second injury is responsible for Workers' Compensation benefits.

The record before us includes deposition testimony of Glenn Stangler, Doctors Ise, Mattheis, Kennedy. The Montana Workers' Compensation Court found that the doctors' testimony showed that Stangler had reached maximum healing, or a medically stable condition following the January 24, 1982 injury.

The standard of review for this Court when reviewing factual findings from the Workers' Compensation Court is whether substantial credible evidence supports the findings of the Workers' Compensation Court. Tenderholt v. Travel Lodge International (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1794-95. Absent a showing of a lack of substantial credible evidence, this Court will not upset the decision of the Workers' Compensation Court. Dunn v. Champion International (Mont. 1986), 720 P.2d 1186, 1189, 43 St.Rep. 1124, 1128. Where crucial testimony is taken by deposition, the court will examine findings more closely, as it is in as good a position as the lower court to assess such evidence. Jones v. St. Regis Paper Co. (1981), 196 Mont. 138, 144, 639 P.2d 1140, 1144.

Reviewed in that light, the record before us on appeal supports the finding that Stangler had reached a stabilized medical condition after his January 24, 1982, back injury.

The testimony of the doctors who saw Stangler indicates that he was still experiencing periodic, sometimes severe pain. None of the doctors found any objectively identifiable injury upon extensive testing conducted on Stangler's back. Neither the physicians nor the Workers' Compensation Court

refuted Stangler's credibility nor his testimony that he was experiencing pain. However, pain does not negate a finding that an injury has reached maximum healing. Belton, 658 P.2d at 408-409.

Stangler's Montana benefits from his first injury were terminated September 27, 1982, based on a report from Dr. Kennedy who gave Stangler a 0 percent whole body impairment rating. At that time, Stangler returned to work in the oil fields, which by all accounts is very strenuous labor. He continued to work for various drilling companies until February 27, 1985. This is a period of almost two and a half years. Even accepting the fact that Stangler was experiencing pain, if his back was not medically stable during this time it is inconceivable that he would be able to keep lifting 50 and 80 pound sacks of chemicals on a "frequent" basis. Stangler's physicians testimony as well as his own testimony concerning the nature and duration of his work supports the finding of the Workers' Compensation Court that Stangler had reached maximum healing before working in North Dakota from 1982-1984.

Regardless of our holding concerning claimant's level of healing, Stangler requests this Court to adopt a corollary rule to the Belton rule of successive injuries. Claimant would like us to follow the rationale of the Oregon Court of Appeals in Miville v. SAIF (Or.App. 1985), 710 P.2d 159, as precedent for this new rule. However, Miville is factually distinguishable from the instant case. In Miville, claimant injured himself in Oregon. Later he suffered an on-the-job injury while working in Indiana where he filed a Workers' Compensation claim. The Oregon Court of Appeals held that if the claimant's injury in Oregon "materially contributed" to claimant's present condition, even though the injury in Indiana also independently contributed to the same condition,

and Indiana denied claimant benefits, then Oregon must provide benefits for claimant's compensable injury.

This rule, although a well-intentioned way to help claimants who otherwise would not receive benefits, is not applicable to Stangler's situation, nor to the case law in Montana.

The deposition testimony of Dr. Ise supports the holding of the North Dakota Workmens' Compensation Bureau that Stangler did not adequately show that he was reinjured while working for Grace Bomac Drilling in North Dakota. Dr. Ise testified that there was no way to determine whether Stangler's back pain in 1984 was related to the January 24, 1982, injury. He also stated that he recommended no treatment for Stangler and that his back will probably never be "perfect." Stangler missed no work because of the alleged second injury. The incident was not recorded on Bomac's foreman's logbook. Stangler asserts that if there was no second injury, Home has to be liable for the condition of Stangler's back in 1984. We find no merit in this argument. Home terminated benefits for Stangler's January, 1984, injury in September, 1984, when it was determined that Stangler had reached maximum healing. We affirm that finding. The condition of Stangler's back in North Dakota in June, 1984, is not relevant in light of that holding.

In addition to the recorded evidence, Montana case law presents problems for Stangler's mandatory benefits argument. Oregon's "material contributory cause," (See Grable v Weyerhaeuser Co. (Or. 1980), 631 P.2d 768) is inconsistent with Montana's "maximum healing" rule adopted in Belton. This Court has refused to allocate benefits based on a first injury, however casual, to a subsequent condition. See e.g. Newman v. Kamp (1962), 140 Mont. 487, 374 P.2d 100. We now uphold the Belton rule that once a claimant has reached

maximum healing or a medically stable condition the insurer at risk at the time of the original injury is no longer responsible for any subsequent injuries or conditions.

Claimant's third issue alleges that Home waived all defenses regarding the reopening of Stangler's claim in 1984 pursuant to § 39-71-608, MCA, when it accepted liability for the January 24, 1982, industrial accident. Section 39-71-608, MCA, states:

> An insurer may, after written notice to the claimant and the division, make payment of compensation benefits within 30 days of receipt of a claim for compensation without such payments being construed as an admission of liability or a waiver of any right of defense.

It is true that Home accepted liability for Stangler's claim relating to the January 24, 1982, injury. In September, 1982, those benefits were properly terminated. In June, 1984, Stangler allegedly reinjured his back while working in North Dakota. He continued working until February 27, 1985. In response to his demand to have his benefits reinstated, Home began paying weekly benefits to Stangler on a nonacceptance basis from February 27, 1985. A March 21, 1985, letter to Stangler from Home concerning his demand for reinstated benefits stated:

> . . . It is our position that Mr. Stangler had reached a medically stable condition prior to October of 1984 when to the best of our knowledge he aggravated his preexisting condition while employed as a derrick hand for Bomac in Williston, North Dakota.

Section 39-71-608 does not require a 30-day notice of nonacceptance of a claim demanding reinstatement of benefits at the time the original compensable injury is claimed. Home provided benefits on a nonacceptance basis while Stangler pursued his claim in North Dakota and then in Montana. There

was no waiver of defenses or acceptance of liability for benefits by Home at any time during those proceedings.

The judgment of the Workers' Compensation Court is affirmed on all issues.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices