No. 99-582

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 306

302 Mont. 399

14 P.3d 1222

GREGG THOMPSON,

Petitioner/Appellant,

v.

CIGNA,

Respondent/Insurer for

DEACONESS HOSPITAL,

Employer/Respondent.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James G. Edmiston, III, Edmiston & Schermerhorn, Billings, Montana

For Respondent:

Leo S. Ward, Browning, Kaleczyc, Berry & Hoven, Helena, Montana

Submitted on Briefs: February 10, 2000
Decided: December 6, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Gregg Thompson appeals a decision of the Workers' Compensation Court declining to assess a 20% penalty against CIGNA for unreasonably delaying payment to Thompson pursuant to § 39-71-2907, MCA (1981). We affirm.

¶2 Thompson raises the following issue on appeal:

¶3 Whether the Workers' Compensation Court erred in refusing to award the 20% penalty pursuant to § 39-71-2907, MCA (1981).

## Factual and Procedural Background

¶4 Thompson suffered an injury to his knee on October 22, 1981, while working for Deaconess Hospital. The hospital was insured by CIGNA who accepted liability for the claim and paid medical and disability benefits. Since Thompson's injuries occurred in the fall of 1981, the 1981 version of the Workers' Compensation Act applies to all facets of Thompson's claim. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382 (citing *Trusty v. Consolidated Freightways* (1984), 210 Mont. 148, 151, 681 P.2d 1085, 1087; *Iverson v. Argonaut Ins. Co.* (1982), 198 Mont. 340, 342, 645 P.2d 1366, 1367).

¶5 As a result of his injury, Thompson underwent 13 knee surgeries which left him permanently totally disabled. Thompson received permanent total disability benefits on a bi-weekly basis. However, Thompson's benefits, amounting to $162.21 per week, were

frozen at the 1981 wage and benefit level.

¶6 In March 1997, Thompson retained attorney Patrick Sheehy to settle Thompson's workers' compensation claim asserting that after 15 years of inflation, the $162.21 per week benefit was not enough to sustain Thompson and his family. Consequently, on June 2, 1997, Sheehy wrote to CIGNA requesting information regarding Thompson's claim. However, CIGNA did not provide the requested information until September 9, 1997.

¶7 On September 23, 1997, Sheehy sent CIGNA a letter wherein he calculated CIGNA's exposure for lifetime permanent-total and permanent-partial disability benefits at $226,675.77. In his letter, Sheehy did not make a settlement demand. Instead, he requested that CIGNA make an offer of settlement.

¶8 On February 11, 1998, almost five months after sending the first letter, Sheehy, having received no reply from CIGNA, sent another letter explaining Thompson's financial needs and requesting discussions on settlement or a partial lump sum advance. When CIGNA again failed to respond, Sheehy sent a third letter on April 2, 1998, setting forth a present value calculation of Thompson's benefits of $106,879.88. Noting in this letter that present value reductions are not allowed on 1981 claims, Sheehy offered to settle the claim for a $150,000 lump-sum payment. CIGNA finally responded in June 1998, and settlement negotiations began.

¶9 By July 1998, Thompson had agreed to settle for an annuity in the amount of $121,132. However, CIGNA's in-state adjuster, Michele Fairclough, did not have settlement authority for the proposed amount. Fairclough indicated that she would need to request authority from a CIGNA claims committee. In early November, Fairclough contacted Sheehy and suggested that he send a signed settlement petition for the $121,132 that they had discussed. Although she did not yet have settlement authority, Fairclough indicated that she was confident the proposal would be approved.

¶10 Sheehy later testified that Fairclough called him in late November or early December to tell him that she had settlement authority for the $121,132. However, contrary to Sheehy's assertions, Fairclough testified that she did not have settlement authority at the time and would not have told Sheehy that she did.

¶11 In January 1999, Fairclough's supervisor directed her to get a new annuity quote, to take a $7,500 overpayment into account, and to explore possible settlement of medical

benefits. To that end, Fairclough obtained a new annuity quote in the amount of $117,100. Fairclough subsequently discussed the new annuity quote with Sheehy along with the need to offset the prior $7,500 advance and a Social Security overpayment. In addition, Fairclough indicated that CIGNA would add $10,000 to the settlement amount if they were able to close the medical benefits as well.

¶12 Sheehy objected to this change in the settlement terms. On February 9, 1999, Sheehy filed a Petition for Hearing requesting that the Workers' Compensation Court enforce the settlement agreement reached between the parties in the amount of $121,132 and award Thompson a 20% increase for unreasonable delay pursuant to § 39-71-2907, MCA (1981), as well as attorney's fees and costs.

¶13 At the end of February 1999, Fairclough received final corporate authority to settle the claim for $121,132. She then forwarded the original settlement petition, which she had received from Sheehy in November, to the Department of Labor and Industry for approval. The department approved the settlement on March 29, 1999, and CIGNA issued the settlement checks on April 26, 1999.

¶14 That same date, a hearing was held regarding Thompson's petition. The only issues presented were whether Thompson was entitled to an award of a 20% penalty and whether he was entitled to attorney's fees and costs. On August 17, 1999, the Workers' Compensation Court issued its Findings of Fact, Conclusions of Law and Judgment wherein the court determined that the delay in this case was unreasonable and was the result of CIGNA's violation of 24.29.804, ARM, requiring workers' compensation insurers to designate an in-state adjuster with authority to settle claims. Although the court determined that CIGNA acted unreasonably, it declined to award a 20% penalty. Nevertheless, the court did award Thompson his attorney's fees and costs.

¶15 Thompson appeals the Workers' Compensation Court's refusal to award the 20% penalty.

## Discussion

¶16 *Whether the Workers' Compensation Court erred in refusing to award the 20% penalty pursuant to § 39-71-2907, MCA (1981).*

¶17 We review findings of fact of the Workers' Compensation Court to determine whether

they are supported by substantial credible evidence. *Matthews v. State Compensation Ins. Fund*, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5 (citing *EBI/Orion Group v. Blythe*, 1998 MT 90, ¶ 17, 288 Mont. 356, ¶ 17, 957 P.2d 1134, ¶ 17). Our review of the Workers' Compensation Court's conclusions of law is plenary; we determine whether its conclusions of law are correct. *Matthews*, ¶ 5 (citing *Liberty v. State Fund*, 1998 MT 169, ¶ 7, 289 Mont. 475, ¶ 7, 962 P.2d 1167, ¶ 7).

¶18 The Workers' Compensation Court determined that although CIGNA's failure to designate an in-state adjuster with authority to settle claims caused an unreasonable delay in this case, the court was precluded from awarding Thompson a penalty because of the express provisions of § 39-71-741, MCA (1981), and § 39-71-2907, MCA (1981).

¶19 Section 39-71-741, MCA (1981), provides for the conversion of bi-weekly payments into a lump sum:

> **Compromise settlements and lump-sum payments--division[(1)] approval required.** The biweekly payments provided for in this chapter may be converted, in whole or in part, into a lump-sum payment. Such conversion can only be made upon the written application of the injured worker or the worker's beneficiary, with the concurrence of the insurer, and shall rest in the discretion of the division, both as to the amount of such lump-sum payment and the advisability of such conversion. The division is hereby vested with full power, authority, and jurisdiction to allow and approve compromises of claims under this chapter. *All settlements and compromises of compensation provided in this chapter are void without the approval of the division. Approval of the division must be in writing.* The division shall directly notify every claimant of any division order approving or denying a claimant's settlement or compromise of a claim. A controversy between a claimant and an insurer regarding the conversion of biweekly payments into a lump sum is considered a dispute for which the workers' compensation judge has jurisdiction to make a determination. [Emphasis added.]

Hence, before a lump-sum payment could be disbursed in this case, it had to be approved by what is now the Department of Labor and Industry.

¶20 Under the law in effect in 1981, lump-sum conversions were the exception to the general rule that the payment of benefits under the Workers' Compensation Act should be periodic. *Sullivan v. Aetna Life & Cas.* (1995), 271 Mont. 12, 16, 894 P.2d 278, 280.

*Accord Utick v. Utick* (1979), 181 Mont. 351, 354, 593 P.2d 739, 741 (citations omitted). The reasoning behind this rule was that the average worker for whose protection the Workers' Compensation Act is intended would be incapable of handling a single large sum of money, would soon dissipate it, and would then be in as poor straits as if Workers' Compensation had never existed. *Utick*, 181 Mont. at 355, 593 P.2d at 741 (citing 3 Larson's Workmen's Compensation Law § 82.71).

¶21 Hence, lump-sum settlements were granted only in exceptional circumstances, i.e., when there was evidence of outstanding indebtedness or a pressing need, or in circumstances in which the best interests of the claimant, the claimant's family, or the general public justified such a settlement. *Hock v. Lienco Cedar Products* (1981), 194 Mont. 131, 139, 634 P.2d 1174, 1178 (citations omitted). *Accord Kuehn v. Nat'l Farmers Union* (1974), 164 Mont. 303, 307, 521 P.2d 921, 924. Consequently, each case for a lump-sum payment had to stand or fall on its own merits. *Utick*, 181 Mont. at 355, 593 P.2d at 741 (citations omitted).

¶22 In the present case, Thompson continued to receive his bi-weekly permanent total disability benefits until the lump-sum settlement was approved by the Department of Labor. In addition, Sheehy did not pursue a partial lump-sum advance to address Thompson's financial problems because both Thompson and CIGNA were interested in settling the entire claim.

¶23 Thompson contends that it was CIGNA's "reprehensible conduct" between July 1998 and March 1999 that prevented the Department of Labor from processing and approving the lump-sum settlement thereby causing an unreasonable delay. Thus, Thompson argues that CIGNA should be subject to the 20% penalty pursuant to § 39-71-2907, MCA (1981), which provides:

> **Increase in award for unreasonable delay or refusal to pay.** When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits *due* a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge, and such a finding constitutes good cause to rescind, alter, or amend any

order, decision, or award previously made in the cause for the purpose of making the increase provided herein. [Emphasis added.]

¶24 However, as the Workers' Compensation Court noted, we held in *Perry v. Tomahawk Transp.* (1987), 226 Mont. 318, 322, 735 P.2d 308, 311, that "[§ 39-71-2907] clearly allows the imposition of the penalty only upon those benefits which are due, that is, owed and payable." No lump-sum payment was "owed and payable" in the case *sub judice* until the Department of Labor approved the settlement in March 1999. And, once the department approved the settlement, CIGNA acted promptly in issuing the check.

¶25 Although we do not condone CIGNA's actions in failing to promptly respond to Thompson's requests for information and letters regarding settlement negotiations and to CIGNA's violation of 24.29.804, ARM, for failing to designate an in-state adjuster with authority to settle claims, we agree with CIGNA that to construe the penalty and lump-sum statutes as suggested by Thompson would abrogate their purpose and remove the department as the final decision maker concerning settlements. Furthermore, while Thompson is correct in arguing that the statutes in effect in 1981 that pertain to his claim should be liberally construed in his favor, § 39-71-104, MCA (repealed 1987), that does not entitle us to read into the Workers' Compensation Act terms that are not there. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Moreover, where multiple provisions of the code must be considered, as in this case, "such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA.

¶26 Accordingly, we hold that the Workers' Compensation Court correctly determined that the plain wording of the statutes precluded awarding a penalty in this case.

¶27 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

Justice Jim Regnier dissenting.

¶28 I disagree with the Workers' Compensation Court and this Court and would award a penalty under the unique facts presented in this case. In my view the majority has construed § 39-71-2907, MCA (1981), too narrowly.

¶29 The Workers' Compensation Court made the following findings with respect to CIGNA's delay in providing its resident adjuster, Michelle Fairclough, authority to settle for $121,132. The Workers' Compensation Court found that this matter would have been resolved in July 1998 and this legal action would never have ensued had CIGNA complied with the law and had a resident adjuster with authority present in Montana. The Court further found that a telephone conversation occurred in November 1998, in which Ms. Fairclough communicated with Mr. Sheehy that CIGNA had approved the settlement for $121,132. Subsequent to this conversation, CIGNA's out-of-state "corporate bureaucratic maze" (words of the Workers' Compensation Court) then put their in-state adjuster in the position of attempting to change the terms of the agreed-upon settlement. The Workers' Compensation Court found the delay resulted from CIGNA's violation of Rule 24.29.804, ARM, which requires workers' compensation carriers to designate an in-state adjuster with authority to settle claims. Most importantly, the Workers' Compensation Court found that CIGNA's delay was unreasonable especially in light of CIGNA's violation of Rule 24.29.804, ARM. Because of CIGNA's delay, the claimant was forced to file a petition for hearing on February 9, 1999, more than six months after the Workers' Compensation Court found that the matter should have been resolved.

¶30 Notwithstanding this compelling factual account, both the Workers' Compensation Court and this Court conclude that a penalty is not allowed because § 39-71-2907, MCA (1981), provides that penalties can only be awarded based on the "full amount of the compensation benefits *due* a claimant . . . ." The majority then refers to § 39-71-741, MCA (1981), which provides that all settlements are void without the specific written approval of the Division of Workers' Compensation, now the Department of Labor and Industry. Read together, according to the majority, there can be no penalty if an insurer drags its feet in processing settlement documents or even violates specific regulations that control insurers because a settlement does not exist until it is approved by the Department.

¶31As correctly noted by the majority, we must decide this case under the law that applied

to persons injured in 1981. Section 39-71-104, MCA (1981), which has subsequently been repealed, provided:

> **39-71-104. Court to give liberal construction to chapter.** Whenever this chapter or any part or section thereof is interpreted by a court, it shall be liberally construed by such court.

In my view the majority has ignored this mandate. In *Tweedie v. Industrial Accident Board* (1936), 101 Mont. 256, 263, 53 P.2d 1145, 1148, we interpreted this statute to mean that the Act is to be liberally construed in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction. Given the specific findings of the Workers' Compensation Court that the insurer disregarded the regulations of this state that govern insurers by not having a resident adjuster with authority to settle claims, that the delay caused by CIGNA was unreasonable, and that the delay prevented this claimant from receiving his settlement by over six months, it is a travesty that a penalty was not awarded. I would follow the mandate of § 39-71-104, MCA (1981), and interpret § 39-71-2907, MCA (1981), to mean that the compensation was *due* at a point in time after July 1998, when the Workers' Compensation Court determined that the matter should have been resolved. This could have been accomplished by the Workers' Compensation Court following up its findings in ¶ 30 (concluding that this matter should have been resolved by July 1998) with an additional finding that the compensation was *due* within a reasonable time thereafter, allowing for a period to process the settlement papers. The approval of the Division, now the Department of Labor and Industry, was a formality when the claimant and the insurer agreed upon a settlement. Certainly the legislature adopted § 39-71-2907, MCA (1981), to prevent the conduct such as was displayed by CIGNA in this case.

¶32 In *Utick v. Utick* (1979), 181 Mont. 351, 593 P.2d 739, we faced a similar unique situation and reversed the Workers' Compensation Court denying the claimant's request for a lump sum advance payment of benefits. In our decision we directed that a penalty be imposed. Just as in *Utick*, the facts of this case are compelling and a penalty should be awarded. I dissent.

/S/ JIM REGNIER

Justice William E. Hunt, Sr. and Justice Terry N. Trieweiler, join in the foregoing dissenting

opinion.

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

1. The Division of Workers' Compensation referred to in this statute was succeeded by the Department of Labor and Industry, which now has the responsibility for approving lump-sum payments.