No. 02-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 180

IN THE MATTER OF MICHAEL ABFALDER,

        Claimant

TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

        Respondent and Insurer for

CEREAL FOOD PROCESSORS,

        Employer,

    v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

        Appellant and Insurer for

CEREAL FOOD PROCESSORS,

        Employer.

APPEAL FROM: Workers' Compensation Court, State of Montana,
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Kelly M. Wills & Kathleen L. Desoto, Garlington, Lohn & Robinson, Missoula, Montana

        For Respondent:

        Sara R. Sexe, Mara, Wenz & Johnson, Great Falls, Montana (For Travelers Indemnity )

        Victor R. Halverson, Halverson, Sheehy & Plath, Billings, Montana (For Claimant Michael Abfalder)

                Submitted on Briefs: January 23, 2003
                      Decided: July 10, 2003

Filed:

                      Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Claimant Michael Abfalder ("Abfalder") injured his back while working for Cereal Food Processors ("Cereal Food") in 1994 and was diagnosed with an occupational disease. Cereal Food's insurer at that time, Nationwide Mutual Fire Insurance Company ("Nationwide"), found the occupational disease compensable. Abfalder suffered several flare-ups and other injuries, subsequent to his original 1994 injury. Travelers Indemnity Company of Illinois ("Travelers") served as Cereal Food's insurer at the time of Abfalder's flare-ups and subsequent injuries. Travelers seeks indemnification from Nationwide for Abfalder's post-1994 injuries.

¶2 The Workers' Compensation Court held that Travelers is entitled to indemnification by Nationwide. Nationwide appeals. We affirm the judgment of the Workers' Compensation Court.

¶3 We address the following issues on appeal:

¶4 1. Was the Workers' Compensation Court's decision supported by a correct application of the law?

¶5 2. Was there substantial credible evidence to support the factual determinations made by the Workers' Compensation Court?

BACKGROUND

¶6 Abfalder worked as an employee of Cereal Food. In 1994, Abfalder's job duties required him to lift 50-pound bags from a conveyer belt and carry them three feet to a pallet. He worked 10-hour days. Abfalder was first injured on the job in 1994. He was diagnosed as suffering an occupational back disease as a result of his continuous heavy lifting.

2

Nationwide was the insurer for Cereal Food at the time of Abfalder's initial injury in 1994, and Nationwide accepted Abfalder's claim.

¶7 Abfalder continued working, with restrictions imposed by the doctor. Despite this, he suffered multiple flare-ups of his injury, which were found to be compensable by Cereal Food's subsequent insurer, Travelers. After each flare-up, Abfalder was able to return to work, with restrictions. In December of 1999, Cereal Food imposed additional physical requirements on Abfalder. Since these additional requirements were outside of Abfalder's restrictions, Cereal Food laid him off.

¶8 The parties to this case do not dispute that Abfalder's claim is compensable. At issue is whether Nationwide or Travelers is liable for compensating Abfalder for his post-1994 injuries. The Workers' Compensation Court held Nationwide was liable for Abfalder's condition, and ordered Nationwide to indemnify Travelers. Nationwide appeals from that judgment.

## STANDARD OF REVIEW

¶9 We review a decision of the Workers' Compensation Court to determine whether that court correctly interpreted the law as it applies to the facts of the case at issue. *Lockhart v. New Hampshire Ins. Co.,* 1999 MT 205, ¶ 13, 295 Mont. 467, ¶ 13, 984 P.2d 744, ¶ 13. When determining whether the Workers' Compensation Court's conclusions of law are correct, this Court's review is plenary. *Thompson v. CIGNA,* 2000 MT 306, ¶ 17, 302 Mont. 399, ¶ 17, 14 P.3d 1222, ¶ 17.

¶10 We review the Workers' Compensation Court's findings of fact to determine if they are supported by substantial credible evidence, not whether there may be contrary findings.

3

*Caekaert v. State Comp. Mut. Ins. Fund* (1994), 268 Mont. 105, 110, 885 P.2d 495, 498. We will not substitute our judgment for that of the Workers' Compensation Court as to the weight of evidence on questions of fact. *Mennis v. Anderson Steel Supply* (1992), 255 Mont. 180, 184, 841 P.2d 528, 530. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn them. *See Perry v. Tomahawk Transp.* (1987), 226 Mont. 318, 320, 735 P.2d 308, 310.

## DISCUSSION

## ISSUE ONE

¶11 Was the Workers' Compensation Court's decision supported by a correct application of the law?

¶12 When an employee has been disabled due to an occupational disease, and suffers a second injury or disability, the first insurer is liable for the claim only if the disability or injury is a recurrence of the initial disability or injury. *Caekaert*, 268 Mont. at 111, 885 P.2d at 499. This rule is known as the "last injurious exposure doctrine." *Caekaert*, 268 Mont. at 111, 885 P.2d at 499. In Montana, this doctrine is codified at § 39-72-303, MCA. Section 39-72-303, MCA, states, in relevant part:

> **Which employer liable.** (1) Where compensation is payable for an occupational disease, the only employer liable is the employer in whose employment the employee was last injuriously exposed to the hazard of the disease.
>
> (2) When there is more than one insurer and only one employer at the time the employee was injuriously exposed to the hazard of the disease, the liability rests with the insurer providing coverage at the earlier of:
>
> (a) the time the occupational disease was first diagnosed by a treating physician or medical panel; or

4

(b) the time the employee knew or should have known that the condition was the result of an occupational disease.

¶13 Nationwide relies on *Belton v. Carlson Transport* (1983), 202 Mont. 384, 658 P.2d 405, and its progeny, *Stangler v. Anderson Meyers Drilling* Co. (1987), 229 Mont. 251, 746 P.2d 99, in support of its position. In both cases, claimants were injured on multiple occasions, while working for different employers. This Court was asked to determine whether the claimants had reached maximum healing, which was key to the determination of which employer's insurer was liable. In both cases, we found that the claimants reached maximum healing after their first injuries and before their alleged second injuries, thus holding that the first insurers were not responsible for the second injuries.

¶14 *Belton* and *Stangler*, however, are distinguishable from the present case. First, we note that both *Belton* and *Stangler* involved two employers, whereas here, only one employer is involved. Second, *Belton* and *Stangler* have been superceded by subsection (2) of § 39-72-303, MCA, which the Legislature added to the statute in 1993. As we stated above, § 39-72-303, MCA, applies to situations in which there is more than one insurer but only one employer, as is the case here. Furthermore, pursuant to § 39-72-303(2), MCA, liability rests with the insurer providing coverage at the earlier of the time the occupational disease was first diagnosed or the time the employee knew or should have known that the condition was the result of an occupational disease.

¶15 Nationwide also contends that the Workers' Compensation Court erred by improperly shifting the burden of proving the cause of Abfalder's disability to Nationwide. Nationwide argues that under *Belton*, the burden of proof is placed on the insurance company which is

5

at risk at the time of the accident in which a compensable injury is claimed. *Belton*, 202 Mont. at 392, 658 P.2d at 409-10. Nationwide argues further that, "When a subsequent injury has arguably **aggravated** a preexisting condition, the second insurer avoids liability for that condition **only** upon proving the claimant had not reached maximum medical healing with respect to his prior workers' compensation injury **or** that the second injury did not in fact permanently aggravate the underlying condition for which the prior insurer was liable." *Stacks v. Travelers Property Casualty*, 2001 MTWCC 9, ¶ 108.

¶16 Nationwide is correct regarding upon which party the burden of proof is placed. However, the record in this case does not demonstrate that the Workers' Compensation Court improperly placed the burden on Nationwide. The Workers' Compensation Court heard extensive evidence from both Nationwide and Travelers regarding Abfalder's injuries. Nationwide has not shown that Travelers failed to meet its burden of proof. We find Nationwide's contention on this issue to be without merit.

¶17 Nationwide also argues that the Workers' Compensation Court erred by ruling that an occupational disease is continuing and that no new occupational disease can develop after maximum medical improvement is reached. Nationwide, however, mischaracterizes the Workers' Compensation Court's ruling. In its Order, the Workers' Compensation Court wrote:

> Nationwide's argument that the original disease ended upon claimant reaching MMI in 1995 and that a new disease began thereafter makes little sense in the context of this case. Since the disease was a continuous process involving repetitive trauma, under that theory the claimant would reach MMI at the end of each day and a new occupational disease would commence the next morning.

6

¶18 The Workers' Compensation Court did not hold that no new occupational disease can develop after maximum medical healing is reached. The Workers' Compensation Court made a determination that *in this case*, Abfalder's condition was caused by repetitive trauma, and that he did not suffer from a new disease subsequent to healing from his 1994 injury. As we discussed above, the facts of Abfalder's case support this conclusion of the Workers' Compensation Court.

ISSUE TWO

¶19 Was there substantial credible evidence to support the factual determinations made by the Workers' Compensation Court?

¶20 In its brief, Nationwide contends that the Workers' Compensation Court disregarded testimony of Abfalder, Abfalder's wife, and Doctors Schumann and Rizzolo. We restate that we review the Workers' Compensation Court's findings of fact to determine if they are supported by substantial credible evidence, not whether there may be contrary findings. *Caekaert*, 268 Mont. at 110, 885 P.2d at 498. Furthermore, the Workers' Compensation Court, as the finder of fact, is in the best position to assess witnesses' credibility and testimony. *Kloepfer v. Lumbermen's Mut. Cas. Co.* (1996), 276 Mont. 495, 498, 916 P.2d 1310, 1312.

¶21 Here, the Workers' Compensation Court *did* address the testimony of the Abfalders and both doctors, albeit not to the extent Nationwide may have liked. Nationwide points out that the Workers' Compensation Court did not discuss the Abfalders' testimony or their credibility. However, as we have stated, it is not our job to assess whether there may be contrary findings.

7

¶22 The record is replete with facts supporting the Workers' Compensation Court's factual findings. For example, Dr. Schumann, Abfalder's treating physician, testified that Abfalder's post-1994 claims only had temporary effects on the pre-existing degenerative condition. Despite further injuries and flare-ups, Abfalder's impairment has not increased since 1995. The Workers' Compensation Court also discussed the testimony of Dr. Rizzolo, an orthopedic surgeon who saw Abfalder at the request of Travelers, noting that Dr. Rizzolo stated that Abfalder's subsequent injuries seem to materially, substantially, and permanently aggravate his condition. Furthermore, Abfalder was not laid off due to any increase in the restriction or impairment, or to deterioration of his condition; he was laid off because Cereal Food increased his work requirements.

¶23 We affirm.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE