Justice James Jeremiah Shea delivered the Opinion of the Court.
***222 ¶ 1 Montana State Fund (State Fund) appeals from the Workers' Compensation Court's (WCC) Order Denying Montana State Fund's Motion for Summary Judgment and Granting Liberty Northwest Ins. Corp.'s Motion for Summary Judgment. We reverse.
¶ 2 We restate the issue on appeal as follows:
Whether the Workers' Compensation Court erred when it held that § 39-71-407(14), MCA, did not apply for purposes of determining liability for the exacerbation of Wiard's occupational disease.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 Kim Wiard (Wiard), began working at Tricon Timber, LLC (Tricon), in 2002. In *647 2010 or 2011, Wiard was working in the planer department when she was diagnosed with bilateral carpal tunnel syndrome (CTS). At that time, Liberty Northwest Ins. Corp. (Liberty) provided Tricon with workers' compensation insurance coverage. Liberty accepted liability for Wiard's CTS as an occupational disease (OD) in August 2011.
¶ 4 Wiard transferred to a different job position at Tricon and her CTS symptoms largely dissipated. She used over-the-counter pain medication, ceased wearing wrist braces, and did not seek additional treatment for her CTS.
¶ 5 In 2012 or early 2013, Wiard again changed jobs at Tricon, moving into a grader position, which she found more mentally and physically demanding than her previous positions.
¶ 6 On November 1, 2013, Liberty ceased providing workers' compensation insurance coverage for Tricon. State Fund then became Tricon's workers' compensation insurance provider and remained Tricon's insurer for the remainder of the time relevant to this case.
¶ 7 After Wiard had worked in the grader position for some time, she began working longer and more frequent shifts. She was having pain in her left hand, but was unable to take time off work.
¶ 8 Wiard sought medical treatment for bilateral wrist pain on ***223 February 17, 2014. She was taken off work and scheduled for follow-up care. However, her condition worsened and she went to an emergency room later that night, complaining of severe right-wrist pain radiating into her shoulder. She was diagnosed with an acute exacerbation of CTS, given medications, and referred to an orthopedic surgeon.
¶ 9 On February 19, 2014, Wiard went to another emergency room, complaining of pain in her left hand. Michael Righetti, MD, diagnosed Wiard with an acute exacerbation of chronic left CTS. Due to the severity of her symptoms, Dr. Righetti performed an emergency carpal tunnel release on her left wrist that day. He then performed a carpal tunnel release on Wiard's right wrist in March 2014.
¶ 10 Wiard filed an OD claim for left CTS with State Fund. State Fund denied the claim, asserting that her OD diagnosis preceded State Fund's insurance coverage. Wiard then submitted her claim to Liberty, who denied liability on the basis that State Fund was now liable.
¶ 11 State Fund paid Wiard's benefits pursuant to § 39-71-407(8), MCA.[1] The insurers then filed cross-motions for summary judgment on the issue of liability in the WCC. The WCC granted summary judgment in favor of Liberty. The court concluded Wiard had reached maximum medical improvement from her earlier CTS diagnosis, and that her later job duties materially aggravated her OD. State Fund appeals from the grant of summary judgment in Liberty's favor.
STANDARD OF REVIEW
¶ 12 We review the WCC's conclusions of law for correctness. Murphy v. WestRock Co. , 2018 MT 54, ¶ 5, 390 Mont. 394, 414 P.3d 276 (citation omitted).
DISCUSSION
¶ 13 Whether the Workers' Compensation Court erred when it held that § 39-71-407(14), MCA, did not apply for purposes of determining liability for the exacerbation of Wiard's occupational disease.
¶ 14 The parties disagree as to whether § 39-71-407(13), MCA, or § 39-71-407(14), MCA, applies to this case. These provisions state:
***224 (13) When compensation is payable for an occupational disease, the only employer liable is the employer in whose employment *648 the employee was last injuriously exposed to the hazard of the disease.
(14) When there is more than one insurer and only one employer at the time that the employee was injuriously exposed to the hazard of the disease, the liability rests with the insurer providing coverage at the earlier of:
(a) the time that the occupational disease was first diagnosed by a health care provider; or
(b) the time that the employee knew or should have known that the condition was the result of an occupational disease.
¶ 15 In this case, there is more than one insurer-Liberty and State Fund-and only one employer: Tricon. There is no dispute that Wiard was injuriously exposed to the hazard of the disease while in Tricon's employ. State Fund argues, therefore, that under § 39-71-407(14), MCA, liability would rest with Liberty, since it was the insurer providing coverage at the time the OD was first diagnosed by a healthcare provider, as well as at the time Wiard knew her condition was the result of an OD. However, the WCC determined that State Fund's reliance on § 39-71-407(14), MCA, was misplaced. Rather than applying the statute, the WCC ruled that the attribution of liability for recurrence of an OD condition is based on two factors: (1) maximum medical improvement; and (2) causation.
¶ 16 In reaching its conclusion, the WCC relied upon several cases in which liability was determined by application of the last injurious exposure rule: Liberty Northwest Ins. Corp. v. Mont. State Fund , 2009 MT 386, 353 Mont. 299, 219 P.3d 1267 ( In re Mitchell ); Lanes v. Mont. State Fund , 2008 MT 306, 346 Mont. 10, 192 P.3d 1145 ; and Caekaert v. State Compensation Mut. Ins. Fund , 268 Mont. 105, 885 P.2d 495 (1994). In In re Mitchell , a worker developed an OD after having been arguably exposed to the hazard of the OD among multiple employers. We distinguished that scenario from those situations in which a worker was diagnosed with an OD and then later suffered from symptoms which arguably arose from that OD-a scenario where, as we explained, "an OD has already been diagnosed, liability for the OD has been determined, and the question is whether a recurrence of the OD condition is attributable to the original employer or is attributable to a second employer based on an intervening exposure to the hazard of the OD...." We held that in such situations, the analysis established in Caekaert and Lanes determines liability. In re Mitchell , ¶ 24. Since Wiard had already been diagnosed with the OD of CTS, the WCC used ***225 the Caekaert / Lanes analysis to determine liability.
¶ 17 State Fund argues that the WCC misapprehended the significance of In re Mitchell's distinction when it focused on whether an OD had been previously diagnosed-rather than whether the worker had had more than one employer-in determining whether to analyze Wiard's case under § 39-71-407(13), MCA, or § 39-71-407(14), MCA. Since Wiard had only one employer, State Fund contends that Caekaert / Lanes does not apply and liability is properly determined under § 39-71-407(14), MCA. State Fund relies on Abfalder v. Nationwide Mut. Fire Ins. Co. , 2003 MT 180, 316 Mont. 415, 75 P.3d 1246, and two WCC decisions, Fuss v. Ins. Co. of N. Am. and Valor Ins. Co., Inc. , 2003 MTWCC 68 and 2004 MTWCC 34,[2] in support of its position.
¶ 18 In Abfalder , Michael Abfalder worked for Cereal Food. In 1994, he developed an OD in his back, and Cereal Food's then-insurer, Nationwide Mutual Fire Insurance Company (Nationwide) accepted liability. Abfalder , ¶ 6. Abfalder continued working, but suffered periodic flare-ups of his back problems. After Cereal Food increased the physical demands of Abfalder's job, the company laid him off because the requirements exceeded his work restrictions. By the time Abfalder was laid off, Travelers Indemnity Company of Illinois had become Cereal Food's insurer. Abfalder , ¶ 7. While the insurers agreed Abfalder's OD was compensable, they disagreed as to which was liable. Abfalder , ¶ 8.
*649 ¶ 19 The WCC determined that Nationwide was the liable insurer. We affirmed. Abfalder , ¶ 2. In so doing, we specifically distinguished Abfalder's facts from cases which involved two employers, holding that § 39-72-303(2), MCA, applies to situations in which there is more than one insurer but only one employer. Abfalder , ¶ 14. We held that the case was controlled by § 39-72-303(2), MCA, which provided:
When there is more than one insurer and only one employer at the time the employee was injuriously exposed to the hazard of the disease, the liability rests with the insurer providing coverage at the earlier of:
(a) the time the occupational disease was first diagnosed by a treating physician or medical panel; or
(b) the time the employee knew or should have known that the ***226 condition was the result of an occupational disease.
Section 39-72-303(2), MCA, was repealed in 2005 and merged into § 39-71-407, MCA. See Nelson v. Cenex , 2008 MT 108, ¶ 31, 342 Mont. 371, 181 P.3d 619. This statutory language, with minor revisions, is now codified as § 39-71-407(14), MCA.
¶ 20 The WCC applied Abfalder in Fuss . Fuss was diagnosed with a respiratory OD in 1997, at which time Insurance Company of North America (ICNA) insured his employer for workers' compensation. Fuss sought additional medical treatment for the OD in 2002, at which time Valor Insurance Company, Inc. (Valor), insured his employer. ICNA argued that it should not be liable for the 2002 recurrence. The WCC disagreed. Relying on our holding in Abfalder , the WCC ruled, "To shift liability to Valor, however, ICNA must demonstrate that claimant suffered a new and different occupational disease while Valor was at risk. It is not enough that the occupational disease for which ICNA is otherwise liable worsened during Valor's watch, or even that his work under Valor's watch materially aggravated his underlying disease." Fuss , 2003 MTWCC 68, ¶ 19 (emphasis in original). The WCC further explained that ICNA could only avoid liability "if it can show that claimant is suffering from a condition unrelated to the original condition diagnosed." Fuss , ¶ 20.
¶ 21 State Fund argues that applying § 39-71-407(14), MCA, to the facts of this case is consistent with Abfalder and Fuss . Liberty disagrees, and argues that the WCC correctly analyzed this case under Caekaert / Lanes .
¶ 22 In Caekaert , the worker also suffered from bilateral CTS, first diagnosed in early 1988. At that time, Caekaert worked for Frank Wilson Plumbing and Heating (Wilson) and concurrently owned and operated a poultry business. Wilson was insured by State Fund, which accepted liability. Although Caekaert underwent surgery for his CTS in 1988, it did not resolve his condition. He was hesitant to undergo additional surgery, and his medical providers took a "wait and see" approach. Caekaert , 268 Mont. at 108, 885 P.2d at 497. In the interim, Caekaert left his employment at Wilson. He continued to operate his poultry business and also intermittently worked as a plumber. Caekaert , 268 Mont. at 109, 885 P.2d at 497. Caekaert underwent additional surgeries for his CTS in 1992 and 1993, and State Fund denied liability. The WCC agreed State Fund was not liable. Caekaert , 268 Mont. at 109, 885 P.2d at 498.
¶ 23 On appeal, we interpreted the codification of the "last injurious exposure" rule found at § 39-72-303(1), MCA.
***227 Caekaert , 268 Mont. at 111, 885 P.2d at 499. Section 39-72-303(1), MCA, stated, "Where compensation is payable for an occupational disease, the only employer liable is the employer in whose employment the employee was last injuriously exposed to the hazard of the disease." Applying the statute, we reversed the WCC's determination, holding that under § 39-72-303(1), MCA, the only employer liable is the employer where the employee was last injuriously exposed. We explained that for the last injurious exposure rule to apply, State Fund had the burden of proving that a second injury or injurious exposure materially or substantially contributed to Caekaert's symptoms of CTS, but it failed to do so. Caekaert , 268 Mont. at 111-15, 885 P.2d at 499-501.
¶ 24 Section 39-72-303(1), MCA, was also merged into § 39-71-407, MCA. Nelson , ¶ 31. It is now codified as § 39-71-407(13), MCA.
¶ 25 In Lanes , Lanes sustained an OD to his left knee in 2001 while working as an electrician for MSE Technology (MSE).
*650 MSE's insurer, State Fund, accepted liability. Lanes , ¶ 3. In 2005, Lanes left MSE and then worked approximately 30 hours per week as a minister. Lanes , ¶¶ 3-5. He resigned his ministry position by the end of 2005 because he believed his knees prevented him from fulfilling his job duties. Lanes , ¶ 6. Lanes filed an OD claim for his right knee with State Fund, alleging his problems stemmed from his employment with MSE. Lanes , ¶ 7. The WCC determined that Lanes's right-knee condition was attributable to the OD he developed while working for MSE. Lanes , ¶ 32. We affirmed, holding that State Fund had failed to demonstrate Lanes suffered a significant aggravation to his pre-existing condition while working as a minister. Lanes , ¶¶ 37-38.
¶ 26 To summarize, in both Abfalder and Fuss , the injured worker was diagnosed with an OD while working for one employer, the employer's then-insurer accepted liability, and the worker suffered a recurrence or aggravation of that OD while working for the same employer, after the employer obtained workers' compensation insurance from a different insurer. In those instances, the court applied § 39-72-303(2), MCA -now codified as § 39-71-407(14), MCA -to determine liability. In both Caekaert and Lanes , the injured worker was diagnosed with an OD while working for one employer, the employer's insurer accepted liability, and the worker suffered a recurrence or aggravation of the OD while working for a subsequent employer. In those instances, we applied § 39-72-303(1), MCA -now codified as § 39-71-407(13), MCA -to determine liability. In all four cases, the worker developed an OD, and then allegedly experienced a recurrence or aggravation of the OD. What distinguishes Abfalder and Fuss from Caekaert and ***228 Lanes -and therefore requires different analyses-is the number of employers.
¶ 27 The determinative facts of this case are directly on point with Abfalder and Fuss -the injured worker experienced a recurrence or aggravation of the same OD while working for the same employer-and fall squarely within the application of § 39-71-407(14), MCA. Nevertheless, the WCC concluded that State Fund was liable for the recurrence of Wiard's OD on the basis that State Fund failed to prove that Wiard did not reach maximum medical improvement for her 2011 condition before her 2014 exacerbation, or that her 2014 exacerbation was the direct and natural result of her 2011 condition. The WCC reasoned, "It is not enough to contend, as State Fund does, that Liberty is liable for Wiard's recurrent condition because it is the same condition for which Liberty previously accepted liability. As the Supreme Court demonstrated in Caekaert , even when the OD remains the same, it is the cause of the recurrence that is key." However, the cause of an OD's recurrence is key only when the injured worker has worked for multiple employers and it is necessary to determine "the employer in whose employment the employee was last injuriously exposed to the hazard of the disease." Section 39-71-407(13), MCA. The flaw in the WCC's reasoning is that it applies an analysis designed to ascertain last injurious exposure for purposes of assigning liability among multiple employers under § 39-71-407(13), MCA, when the facts of this case-same employer and same OD-require the application of § 39-71-407(14), MCA.
¶ 28 Whether Wiard had reached maximum medical improvement and whether she sustained a material aggravation to her underlying OD, while relevant to a determination of liability in a multiple-employer scenario such as Caekaert / Lanes , are irrelevant when determining liability in a single-employer, multiple-insurer scenario. As the WCC noted in Fuss , a worsening or material aggravation of the underlying disease is insufficient to shift liability; in a single-employer, multiple-insurer scenario, the only way the originally liable insurer can avoid liability is if it demonstrates that the injured worker is suffering from a new and different OD. Fuss , ¶¶ 19-20. There is no dispute here that Wiard is not suffering from a new and different OD. She is suffering from a recurrence of the same OD, while working for the same employer. The WCC's determination that Wiard's later work materially aggravated her CTS is insufficient to shift liability from Liberty to State Fund.
***229 CONCLUSION
¶ 29 The Workers' Compensation Court erred when it held that § 39-71-407(14), MCA, does not apply for purposes of determining liability for the exacerbation of *651 Wiard's OD. Section 39-71-407(14), MCA, applies to the instant case and thus liability for the OD remains with the insurer providing coverage at the time the OD was first diagnosed.
¶ 30 Reversed.
We Concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
INGRID GUSTAFSON, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

"If there is no dispute that an insurer is liable for an injury but there is a liability dispute between two or more insurers, the insurer for the most recently filed claim shall pay benefits until that insurer proves that another insurer is responsible for paying benefits or until another insurer agrees to pay benefits. If it is later proven that the insurer for the most recently filed claim is not responsible for paying benefits, that insurer must receive reimbursement for benefits paid to the claimant from the insurer proven to be responsible." Section 39-71-407(8), MCA.

The WCC denied Fuss's motion for partial summary judgment in 2003 MTWCC 68. The matter proceeded to trial and the WCC entered Findings of Fact, Conclusions of Law, and Judgment in 2004 MTWCC 34.